Ned Wayburn, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 74348. Promulgated June 26, 1935.

*Colman Gray, Esq.*, for the petitioner.
*Richard W. Wilson, Esq.*, for the respondent.

#### OPINION.

Arundell: The respondent determined a deficiency in petitioner's income tax for 1930 in the amount of $2,526.94 and asserted a 50 percent fraud penalty in the amount of $1,263.47. In arriving at the deficiency the respondent made several additions to income, reduced a claimed deduction for taxes paid, and increased the deduction allowed for interest paid. Petitioner alleges error as to only two matters: (1) The addition to income of $22,080.91 described in the deficiency notice as unexplained bank deposits in the name of Mrs. Wayburn, and (2) the assertion of the fraud penalty.

The major addition to income is an amount of $22,080.91 which petitioner drew from the Ned Wayburn Studios of Dancing, a corporation, and which he did not return as income. Petitioner con-

tends that this amount was not income to him, but was drawn for the purpose of entertaining people from whom the corporation drew its business and was expended for that purpose.

Petitioner is a theatrical producer and stage dancing instructor. He has been a theatrical producer for over thirty years. In 1920 he opened a dancing studio, which was incorporated in 1922 or 1923 under the name of Ned Wayburn Studio of Stage Dancing, hereinafter called the corporation. The capital stock of the corporation consisted of five shares, of which petitioner owned two, and his wife three, shares. Petitioner was president and managing director of the corporation.

The business of the corporation was obtained partly through advertising in magazines, newspapers, and theater programs, and partly through personal contacts of petitioner and his wife with various organizations and with many individuals, particularly well known people of the stage, screen, and radio. These personal contacts were made largely through entertainment provided by petitioner and his wife, consisting of theater parties, meals at public places, and social gatherings at their home in Long Island. Petitioner and his wife attended the opening performances of shows and clubs and various places of entertainment. For these openings petitioner purchased tickets for himself and his guests. He also staged many benefit affairs at his own expense. These expenditures were considered necessary to keep the corporation's name before the public.

Petitioner's home at Bayside, Long Island, is equipped with special entertainment facilities, including a recreation room capable of accommodating from eighty-five to a hundred people. This room contains a bar, card nooks, a table for roulette wheels, billiard table, and player piano. On the grounds of the home are a tennis court and equipment for various out-door games for children and adults. During 1930 petitioner and his wife had guests at their Long Island home almost daily; they had guests for breakfasts, luncheons, teas, dinners; they gave dinner parties for groups of twelve to fifteen guests; they staged entertainments for larger groups, numbering as many as eighty-five people; they had week-end guests. Some of their parties were catered affairs; for some they employed extra servants. They employed professional entertainers. Among the people entertained at petitioner's home were newspaper and theatrical men, and prominent people of the stage, screen, and radio. The children of some of petitioner's guests were pupils at his dancing studio. In addition to his Long Island home petitioner had a summer home in New Hampshire, with about seven acres of ground and fronting on a lake. He and his wife entertained extensively there.

The entertainments at petitioner's home were managed by his wife. To defray the entertainment expenses petitioner withdrew from the corporation weekly sums of around $400, with some variations, which he turned over to his wife. The sums so received by Mrs. Wayburn, aggregating $22,080.91 for the year 1930, were deposited in her bank accounts. Household expenses were paid from petitioner's salary which he received from the corporation. Neither petitioner nor his wife kept any books or records of personal expenditures or of entertainment expenses.

The amounts paid by the corporation to petitioner for entertainment were charged to salary accounts on the corporate books. The corporation claimed a deduction therefor, as salaries, in its 1930 return. The entry of these items under salaries rather than under the heading of entertainment expenses was for the purpose of avoiding explanations to creditors.

Both the petitioner and his wife appeared as witnesses and described at some length the various kinds of entertainment they provided both in and outside their home, testified as to the numbers of people entertained at different functions, the occupations or professions of some, and gave the names of some of the people entertained. They also testified as to the necessity of entertaining people who were able to and did bring pupils to the corporation. This latter evidence we do not regard as material except to show the purpose for which the $22,080.91 was received by the petitioner. We make no findings as to whether or not this sum was an ordinary and necessary expense of the corporation. There is, however, evidence that the sum of $22,080.91 was approximately 10 percent of the gross income of the New York studio of the corporation. We do find as a fact that this sum was furnished to petitioner by the corporation for the purpose of entertaining, and that petitioner entertained extensively for the purpose of benefiting the corporation. We are not convinced, however, that the whole sum was devoted to entertainment in behalf of the corporation. The evidence is that much of the entertaining was done at petitioner's home. No segregation was made between expenditures for maintaining the home for the use of petitioner and his family and those made for the purpose of entertaining for the benefit of the corporation. Doubtless, too, petitioner and his wife entertained personal guests as distinguished from those that they invited for the purpose of furthering the business of the corporation. It is apparent that in entertaining in the home there is inevitably an overlapping of the costs pertaining to the maintenance and operation of the home as such and those of providing entertainment. Perhaps in some cases a fair appor-

tionment of costs might be made, but that was not attempted here. In fact, petitioner testified that he had no way of making any segregation of expenditures. Some of the entertainments in this case were catered affairs, and in some cases professional entertainers were brought in. In such cases the costs could no doubt have been determined by the petitioner. We have critically examined the testimony and it is our conclusion that a substantial sum was expended by petitioner and his wife out of the funds received from the corporation directly for entertainment in behalf of the corporate business. But we are unable to determine exactly the amount expended solely for that purpose. Petitioner relies on *Blackmer* v. *Commissioner*, 70 Fed. (2d) 255, in which the taxpayer was allowed a deduction for the entire amount claimed to have been expended as entertainment and publicity expenses. The facts of that case are somewhat different from those before us. In the *Blackmer* case it appears that the claimed business expenses did not include expenses of a personal character such as the entertainment of the taxpayer's family and close friends. Moreover, in that case, while the taxpayer did not keep an account book showing his expenditures, he had some records, "checks, statements of account, and vouchers." The court there pointed out that although such records were not introduced in evidence, "it does not appear that any question was raised as to his failure to produce them at the hearing." In the present case neither petitioner nor his wife, according to their testimony, kept any records. Petitioner did not know whether any canceled checks had been preserved. In view of the difference in the facts the *Blackmer* case is not authority for the finding in this case of a business expense of the entire sum claimed. This phase of the case seems to us to fall within the holding in *Cohan* v. *Commissioner*, 39 Fed. (2d) 540, where, upon proof of business expenses having been incurred, but the amount was not established, the court said: "The Board should make as close an approximation as it can, bearing heavily if it chooses upon the taxpayer whose inexactitude is of his own making." Applying this rule, and making the best approximation that we can, we find as a fact that the petitioner's expenditure for entertainment in behalf of the corporation amounted to $12,000 in the year 1930. To the extent that the petitioner expended that amount for the corporation he was an agent of the corporation entrusted with the handling of that sum for the benefit of the corporation, and not for his personal use, and as it was expended for the purpose for which it was received, it was not income and the respondent erred in treating it as such. The evidence not being sufficient to establish that the balance of the $22,080.91 was expended for the corporation, that amount should be included in the petitioner's income.

Other items added to income by the respondent are not in issue, but there was evidence at the hearing as to some of them because of the respondent's charge of fraudulent understatement of income.

One item is an amount of $6,400 received by petitioner in 1930 for rehearsing a show being produced by Florenz Ziegfeld in which three Wayburn pupils were starred. This sum was received in installments which petitioner handed over to the corporation's accountant without explanation as to the disposition to be made of them. The accountant credited them to petitioner's loan account on the corporate books. The $6,400 was not returned by petitioner as income, but is now conceded by him to be income for 1930.

Another item is an amount of $3,762.50 said by respondent to be dividends received by Mrs. Wayburn from four corporations. Neither petitioner nor Mrs. Wayburn were able to give any information as to this item. Mrs. Wayburn testified that she had some stock which was held by a bank as collateral, and there was a possibility that the bank had received some dividends on such stock. The respondent offered no proof on this, but petitioner concedes taxability solely because he was unable to produce evidence.

No evidence was offered by either side concerning an amount of $82.74 added to income by respondent as interest received. The respondent increased a claimed deduction for interest paid by $2,615.19. There was no evidence on this.

Petitioner received a salary from the New York office of the corporation of $250 per week and he also received certain sums from the Chicago office. He did not return as 1930 income his salary for the last week in that year and the amount thereof, $250, was added to 1930 income by the respondent. Evidence was offered designed to show that he did not receive his last weekly salary check for 1930 until 1931. The evidence leaves some doubt as to the time of receipt by petitioner, but as the pleadings frame no issue concerning this matter we do not pass upon it. *Coosa Land Co.*, 29 B. T. A. 389.

The joint return of petitioner and his wife for 1930 was prepared by an accountant on the basis of such data as he could find in the records of the corporation. When he had prepared it he presented it to petitioner during a rehearsal of the Ziegfeld show mentioned above. Petitioner was extremely busy and was physically ill and did not take time to analyze the return. He asked the accountant whether it was all right, and upon the accountant's assurance that it was right as far as he knew, petitioner signed the return.

Counsel for the respondent points to petitioner's omission of the above amounts of $6,400, $3,762.50, and $22,080.91 as sustaining the

charge of fraud. We have disposed of the item of $22,080.91. We are not at all sure that the amount of $3,762.50 was actually received by petitioner's wife. It remains in income only because the respondent's finding thereon is presumptively correct. On the state of the record we can not say that there was an omission of this item with fraudulent intent.

The receipt of the $6,400 in 1930 was proved and is admitted by the petitioner. Omission of it from the return is sought to be explained on the ground that petitioner was extremely busy at the time the return was prepared and presented to him for signature. While this omission does not appear to have been a deliberate act designed to defraud, the explanation offered does not excuse petitioner's failure to satisfy himself that the return contained a full and complete disclosure of the facts. The rendering of a proper return should be regarded by every citizen as a vital part of his life equally with that of attention to his business. Failure to give the necessary time and attention to make an honest effort to render a full and complete return can not be treated as less than extreme negligence. Petitioner says he was ill at the time. We do not doubt his word on this, but if he was not too ill to attend daily rehearsals at the theater he was not too ill to give some slight attention to his income tax return. While the negligence of the petitioner seems inexcusable on any ground developed in the evidence, his acts, which were those of omission, do not impress us as fraudulently conceived with intent to evade tax. The respondent has the burden of establishing fraud; he has not established it affirmatively; and, upon consideration of all the evidence, we do not find there was " fraud with intent to evade tax." Sec. 293 (b), Revenue Act of 1928. We accordingly hold that petitioner is not subject to the 50 percent penalty. The respondent has not asked for the imposition of any other penalty.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

MURDOCK, dissenting: The Commissioner has determined that $22,080.91 which the petitioner received in cash from a corporation in which he and his wife owned all of the stock was income to the petitioner. It was, therefore, incumbent upon the petitioner to prove that this amount was not income to him. He admits that he received this money and that he and his wife spent it, but he contends that it was not income to him because it was drawn and used for the purpose of entertaining people from whom the corporation drew its business. In view of the fact that the corporation was a family affair, susceptible of easy control by the petitioner, and of the fur-

ther fact that the alleged expenditures might easily be confused with personal expenditures of the petitioner and his wife, the evidence should be closely scrutinized to determine with reasonable certainty the exact purpose for which the expenditures were made. The amount involved is a substantial one. The petitioner kept no records of the expenditures. There was no way in which the Commissioner could make any reasonable independent investigation either of the amount expended or of the exact purpose for which any particular amount was expended. Thus he could not form any independent opinion as to whether or not the petitioner was using all or any part of the amount for his own purposes. Purpose is a conclusion to be drawn from facts. A taxpayer has no right to expect that his judgment alone of the purpose for which such a large sum was expended will be determinative for Federal income tax purposes. His failure to produce evidence of the various expenditures in sufficient detail to enable the Board to determine to what extent the expenditures were for the benefit of the corporation and to what extent, if any, they were personal to the petitioner is, in my opinion, reason to sustain the determination of the deficiency made by the Commissioner.

BLACK, SEAWELL, and MATTHEWS agree with this dissent.

---

McMAHON, dissenting: Upon the authority of the principles of *R. P. Shea*, 24 B. T. A. 798, and *Helvering* v. *Taylor*, 293 U. S. 507, none of the $22,080.91 should be included in petitioner's income. The instant proceeding is distinguishable from *Joseph F. Logel*, 24 B. T. A. 798, heard and reported with the *Shea* case. The undisputed, unimpeached, corroborated testimony of petitioner Wayburn and Mrs. Wayburn, taken together, to the effect that the whole amount was expended to promote the business of the corporation, is sufficient as a basis for the exclusion of the whole amount from his income as required by the principle of *Cohan* v. *Commissioner*, 39 Fed. (2d) 540, relied upon in the majority opinion. There is no basis for including all, or a part, of it. The inclusion of any part of it must be founded upon a mere guess, at best. The evidence fails to disclose any other figure. No finding should be made unless a basis for it can be pointed to somewhere in the record. There is nothing in the *Cohan* case which requires us to thus guess, under facts and circumstances such as we have presented here. Either all of the amount in question or none of it should be included in petitioner's income and, as here pointed out, the evidence requires the exclusion of all of it.