John M. Berry and Virginia P. Berry v. Commissioner.
Berry v. Commissioner
Docket No. 62498.
United States Tax Court
T.C. Memo 1960-158; 1960 Tax Ct. Memo LEXIS 131; 19 T.C.M. (CCH) 829; T.C.M. (RIA) 60158; July 22, 1960
*131 Held, on the evidence presented that the failure of petitioners to file declarations of estimated tax for the years 1951 and 1953 was not due to reasonable cause but to willful neglect and, accordingly, that petitioners are liable for additions to tax under section 294(d)(1)(A), I.R.C. 1939. John M. Berry, Esq., pro se, New Castle, Ky., and D. K. Floyd, Esq., for the petitioners. Bernard J. Doyle, Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: The respondent has determined an overassessment and additions to tax of the petitioners as follows: Additions to Tax
Overassess-
Section 294
Section 294
Year
Deficiency
ment
(d)(1)(A)
(d)(2)
1951
none
none
$1,196.28
$775.96
1952
none
$1,220.64
528.62
342.89
1953
none
none
495.00
330.00
By order of this Court dated March 4, 1959, the case was dismissed for lack of jurisdiction insofar as it related to the taxable year 1952. By a notice filed December 2, 1959, the respondent has conceded that the petitioners are not liable for the additions to tax under section 294(d)(2) of the Internal Revenue Code of 1939. [1] The single issue remaining is whether petitioners are liable for the additions to tax under section 294(d)(1)(A) for the taxable years 1951 and 1953. *133 Findings of Fact The stipulated facts are found. The petitioners are husband and wife residing in New Castle, Kentucky. They filed their joint Federal income tax returns for the taxable years 1951 and 1953 with the collector or director of internal revenue for the district of Kentucky on March 18, 1952, and March 12, 1954, respectively. The petitioners did not file a declaration of estimated tax for any of the taxable years 1951 through 1953. Additional assessments of deficiencies which are not here in issue, were made in the income tax of the petitioners for the years 1951 and 1953, on November 8, 1955. Petitioner John M. Berry, hereinafter referred to as petitioner, has been an attorney engaged in the private practice of law for approximately 33 years. In addition to his practice, petitioner has, since 1944, been vice-president and general counsel for the Burley Tobacco Growers Association, an organization having a farmer membership of approximately 450,000 and concerned with the administration of the price support program for burley tobacco in the five state area of Kentucky, West Virginia, Ohio, Indiana, and Missouri. He has also been extensively engaged in the operation *134 of farm lands. In his Federal income tax returns for the years 1951, 1952, and 1953, petitioner reported salary income from the Burley Tobacco Growers Association, together with income from dividends, interest, the practice of law, the operation of a farm, the sale or exchange of capital assets, rents, and from a partnership as follows: 1951
1952
1953
Salary - Burley Tobacco-Growers Assoc.
$ 4,674.92
$ 5,500.08
$ 5,500.00
Dividends
1,924.34
2,027.52
2,338.94
Interest
414.12
1,596.50
2,975.50
Practice of Law
5,020.09
9,231.85
14,612.64
Farming
8,380.65
5,495.42
2,665.25
Sale or exchange of capital assets
4,113.70
3,500.00
1,239.56
Rents
502.80
681.90
720.00
Partnership-Planters Loose Leaf Warehouse
2,059.00
Total
$27,089.62
$28,033.27
$30,051.89
Until 1944, petitioner prepared his own Federal income tax returns and also prepared such returns for some of his clients. Beginning in 1944, the press of petitioner's law practice and his duties with the Burley Tobacco Growers Association caused petitioner to cease doing his own and other returns. At this time, petitioner engaged Joseph R. Fears to prepare his own tax returns and *135 the returns of some of petitioner's clients. Fears had been employed as a revenue agent during 1935 and 1936. He left this job for approximately six months because of illness. Thereafter, he was employed in the office of the collector of internal revenue until some time in 1938 or 1939. During this employment, Fears assisted taxpayers in making out income tax returns. Fears then left the office of the collector and formed a partnership with Sherman Miller, in which the two of them engaged in doing tax work. Fears was neither an attorney nor a certified public accountant. Fears prepared petitioner's Federal income tax returns for the years 1944 through 1951 and otherwise advised petitioner with regard to income tax matters. Petitioner discussed the matter of filing a declaration of estimated tax with Fears some time after the requirement for filing a declaration of estimated tax was added to the Internal Revenue Code, but the time or times of such discussions were not shown. Fears expressed the opinion that petitioner was not required to file a declaration of estimated tax. Petitioner's returns for the taxable years after 1951 were prepared by D. K. Floyd, petitioner's partner in *136 the practice of law. The failure of petitioner to file declarations of estimated tax for the taxable years 1951 and 1953 was not due to reasonable cause. Opinion Petitioner did not file a declaration of estimated tax for either of the taxable years 1951 or 1953. In fact petitioner testified he had never filed a declaration of estimated tax prior to 1956. Section 58(a) of the Internal Revenue Code of 1939, with certain exceptions not here material, provides: "SEC. 58. DECLARATION OF ESTIMATED TAX BY INDIVIDUALS. "(a) Requirement of Declaration. - Every individual * * * shall, at the time prescribed in subsection (d), make a declaration of his estimated tax for the taxable year if - "(1) his gross income from wages (as defined in section 1621) can reasonably be expected to exceed the sum of $4,500 plus $600 with respect to each exemption provided in section 25(b); or "(2) his gross income from sources other than wages (as defined in section 1621) can reasonably be expected to exceed $100 for the taxable year and his gross income to be $600 or more." Section 58(d) provides that such declarations shall be filed on or before March 15 of the taxable year, except that if *137 the requirements of section 58(a) are first met after March 1, June 1, or September 1 of the taxable year the declaration shall be filed on or before June 15, September 15, or January 15 of the succeeding taxable year, as the case may be. A mere glance at the schedule (set forth in our findings) of the income received and reported by petitioner on his income tax returns for the years 1951 and 1953 is sufficient to demonstrate clearly that petitioner came within the provisions of section 58(a) requiring the filing of a declaration of estimated tax for each of the years involved. Petitioner contends, however, that his failure to file such declarations was due to reasonable cause and not willful neglect, within the meaning of section 294(d)(1)(A). Section 294(d)(1)(A) provides: "SEC. 294. ADDITIONS TO THE TAX IN CASE OF NONPAYMENT. * * *
"(d) Estimated Tax. - "(1) Failure to File Declaration or Pay Installment of Estimated Tax. - "(A) Failure to file declaration. - In the case of a failure to make and file a declaration of estimated tax within the time prescribed, unless such failure is shown to the satisfaction of the Commissioner to be due to reasonable cause and not *138 to willful neglect, there shall be added to the tax 5 per centum of each installment due but unpaid, and in addition, with respect to each such installment due but unpaid, 1 per centum of the unpaid amount thereof for each month (except the first) or fraction thereof during which such amount remains unpaid. In no event shall the aggregate addition to the tax under this subparagraph with respect to any installment due but unpaid, exceed 10 per centum of the unpaid portion of such installment. For the purposes of this subparagraph the amount and due date of each installment shall be the same as if a declaration had been filed within the time prescribed showing an estimated tax equal to the correct tax reduced by the credits under sections 32 and 35." Petitioner has been an attorney actively engaged in the practice of law for approximately 33 years. In addition to his private practice, he has, since 1944, been vice-president and general counsel for the Burley Tobacco Growers Association, a cooperative marketing association having a farmer membership of approximately 450,000 concerned, among other things, with the administration of the price support program for burley tobacco in Kentucky, *139 West Virginia, Ohio, Indiana, and Missouri. He has also been extensively engaged in the operation of farm lands. He testified that he owned approximately 1,000 acres of farm land. As his returns indicate, in addition to the salary he received from the Burley Tobacco Growers Association, during the years involved, he received substantial income from dividends, interest, the practice of law, farming, sale or exchange of capital assets and rents, and, in 1951, from a partnership in a loose-leaf (tobacco) warehouse. Prior to 1944, petitioner had prepared his own tax returns, as well as the returns for some of his clients. He states, however, that beginning in 1944 "because of his increasing law practice, the great deal of time required by the tobacco program and other activities, he found it virtually impossible to continue in income tax work" and engaged Joseph R. Fears, a former revenue agent and employee in the office of the then collector of internal revenue, to prepare his returns and the returns for some of his clients from 1944 to and including 1951, and that he relied upon the advice of Fears that no declaration of estimated tax was necessary. We are not impressed by petitioner's *140 contention that his reliance upon the advice of Fears constitutes reasonable cause for his failure to file a declaration of estimated tax for the year 1951. In the first place, a taxpayer's "busyness" with his other interests is, of itself, hardly justification for his failure to file the returns required by the internal revenue laws of the United States. As was pointed out in Ned Wayburn, 32 B.T.A. 813, 818, "The rendering of a proper return should be regarded by every citizen as a vital part of his life equally with that of attention to his business." See also Coates v. Commissioner, 234 F. 2d 459, affirming a Memorandum Opinion of this Court. Nor is the difficulty of estimating income because of the varied sources from which it is received, or the fact that a tobacco farmer might sell his crop in the following January instead of December of the taxable year, sufficient excuse for filing no declaration of estimated income at all, particularly in view of the provisions of section 58(a) with respect to the dates for filing declarations and amended declarations. The statute does not require exactitude and greater latitude is permitted to farmers at least *141 two-thirds of whose total estimated gross income from all sources is derived from farming. See sections 60(a) and 294(d)(2). In the second place, petitioner impressed us as being more qualified to judge the necessity for filing a declaration of estimated tax than Fears. In Rene R. Bouche, 18 T.C. 144, this Court said: "Petitioner also relies on the fact that he turned over to an accountant all financial affairs, including the preparation of his tax returns, contending that this fact shields him from the penalty imposed by respondent. For such fact to be a defense against the consequences of the failure to file a return, certain prerequisites must appear. It must appear that the intervening person was qualified to advise or represent the taxpayer in the premises and that petitioner relied on such qualifications." Fears was neither an attorney nor a certified public accountant, and it is doubtful that his relatively brief employment as a revenue agent and in the office of the collector of internal revenue, principally engaged in making outside investigations related to trust estates, was sufficient to qualify him as a tax expert, particularly with respect to a section *142 first added to the Code by the Current Tax Payment Act of 1943, subsequent to the above employment. Moreover, there is no evidence as to when petitioner discussed the necessity of filing a declaration with Fears, other than that it occurred some time after the requirement for filing a declaration of estimated tax was added to the Internal Revenue Code. There is no evidence of any specific discussion regarding the necessity for filing a declaration for the taxable year 1951. The testimony of Fears, as well as that of petitioner, suggests that the principal reason for the advice given petitioner by Fears and for petitioner's decision that the filing of a declaration of estimated tax was not necessary for any of the years involved was based upon the conclusion that the penalty provisions of the statutes relating to the filing of declarations of estimated tax would not be enforced. Fears testified that when the question first arose as to the necessity of petitioner filing a declaration of estimated tax, he consulted the then collector of internal revenue and that the collector stated "Well, Joe, there hasn't been any penalty imposed on anyone that I know of for failure to file a declaration *143 of estimate in a case of this kind." The former collector was not called as a witness to corroborate such statement. Nor is there any evidence as to the information given him at the time the alleged statement was made or the "case of this kind" he had in mind. On the evidence presented, we are not convinced that the then collector of internal revenue advised Fears (or through him, petitioner) that, under circumstances such as we have here, the statutes relating to the filing of a declaration of estimated tax would not be enforced. In any event, reliance upon the possible, or probable, non-enforcement of such statutes does not, in our opinion, constitute reasonable cause for the failure of the petitioner to file declarations of estimated tax for the years involved. Petitioner's income tax returns for the years 1952 and 1953 were not prepared by Fears but by petitioner's law partner, D. K. Floyd. Although Floyd is an attorney admitted to practice before the Treasury Department and this Court, there is no evidence petitioner discussed with his partner the necessity for the filing of a declaration of estimated tax by petitioner for either of the years 1952 or 1953. Also, though present *144 and of counsel for petitioner at the hearing of this case, Floyd was not called upon to testify. Petitioner, on brief, recognizes this deficiency in the evidence, but nevertheless argues that the fact that petitioner did not prepare his return or do any part of his tax work for the year 1953, but relied upon Floyd, is reasonable cause for his failure to file a declaration of estimated tax for that year. We do not agree. Apparently petitioner's non-compliance with respect to the year 1953 was based upon the same reasons advanced with respect to the year 1951, and was but a continuation of the same pattern. As we have indicated above, this is not sufficient. Both petitioner and his partner are attorneys experienced in the preparation of income tax returns and presumably familiar with the Federal internal revenue laws relating to the filing of declarations of estimated tax. A simple reading of sections 58(a) and 294(d)(1)(A) should, we think, have led them to the same conclusions we expressed in Rene R. Bouche, supra: "An examination of the statutes reveals that the provisions requiring the filing of a declaration of estimated tax are no less mandatory than those requiring *145 the filing of final income tax returns. The sections of the Code so providing are clear and explicit. They specify which taxpayers shall file and the time and place of filing. They provide for the payments to be made in accordance with the declaration. They provide specifically the sanctions or penalties in the form of additions to the tax that will follow a failure to comply with the law. * * *" The failure of the petitioner to file declarations of estimated tax for the years 1951 and 1953 was not due to reasonable cause but to willful neglect. Accordingly, we hold that petitioner is liable for the additions to tax imposed by section 294(d)(1)(A) for the years 1951 and 1953. In view of respondent's concession, and in the light of the Supreme Court's recent decision in Commissioner v. Acker, 361 U.S. 87, however, petitioner is not liable for any additions to tax under the provisions of section 294(d)(2). Decision will be entered for the respondent for additions to tax in the amounts of $1,196.28 for 1951 and $495.00 for 1953. Footnotes
1. All references to the statutes, unless otherwise indicated, are to the Internal Revenue Code of 1939.↩