United Aniline Company v. Commissioner. Louis and Anna I. Aronson v. Commissioner.
United Aniline Co. v. Commissioner
Docket Nos. 84093, 84094.
United States Tax Court
T.C. Memo 1962-60; 1962 Tax Ct. Memo LEXIS 247; 21 T.C.M. (CCH) 327; T.C.M. (RIA) 62060; March 21, 1962
*247 1. Expenses and depreciation on yacht owned by corporation, used exclusively by controlling stockholder and family and their guests, held not deductible by corporation in excess of amounts allowed by the Commissioner. 2. Travel and entertainment expenses of controlling stockholder paid by corporation in excess of amounts allowed by the Commissioner held personal and not deductible by corporation. 3. Personal telephone and automobile expenses of controlling stockholder paid by corporation held not deductible by corporation as additional compensation. 4. Rate of depreciation on leasehold improvements determined. 5. Addition to tax for failure to file return when due, not imposed. 6. Amounts properly disallowed in 1 and 2 held equal to fair value of benefits received by controlling stockholder and taxable to him. 7. Unidentified logbooks of yacht held not admissible in evidence on issues before the Court. Lester H. Salter, Esq., 146 Westminster St., Providence, R. I., and James R. McGowan, Esq., for the petitioners. Frank V. Moran, Jr., Esq., for the respondent. DRENNEN
Memorandum Findings of Fact and Opinion DRENNEN, Judge: In these consolidated proceedings respondent determined *248 deficiencies in income tax and addition to tax under section 6651(a) of the Internal Revenue Code of 1954[1] against petitioners for the taxable years and in the amounts as follows: Addition to Tax
Docket No.
Petitioner
Year
Deficiency
Sec. 6651(a)
84093
United Aniline Company
1954
$3,916.07
1955
2,861.44
1956
4,658.01
$232.90
84094
Louis and Anna I. Aronson
1954
4,435.00
1955
4,992.49
1956
4,225.06
The issues remaining for decision are: 1. Whether the two books purporting to be the logbooks of the yacht Penguin are admissible as evidence on the issues before the Court. 2. Whether petitioner United Aniline Company (herein referred to as Aniline) incurred deductible expenses in connection with the yacht Penguin during the taxable years 1954, 1955, and 1956 in any amounts in excess of $9,072.26, $9,946.90, and $8,451.61, respectively. 3. Whether the amounts charged to Louis Aronson's travel account on the books of Aniline and deducted by Aniline on its tax returns for the taxable years 1954, 1955, and 1956 in the respective amounts of $6,536.50, $6,859.69, and $6,519.51 represent deductible expenses of Aniline in excess *249 of the amounts of $4,976.50, $5,039.69, and $4,959.51, respectively. 4. Whether Aniline is entitled to deduct the amounts it paid for the personal telephone and automobile expenses of Aronson as additional compensation to Aronson. 5. The proper rate of depreciation for the cost of leasehold improvements made by Aniline during the taxable years 1954 and 1955. 6. Whether Aniline is liable for the addition to tax provided for in section 6651(a) for failure to file its 1956 return when due. 7. Whether the excess of the amounts claimed as deductions for travel expenses and yacht expenses for the taxable years 1954, 1955, and 1956 by Aniline over the amounts allowable as deductions for the said expenses constitutes income to Aronson. Findings of Fact Louis and Anna I. Aronson (hereafter referred to as Aronson and Anna or Aronson's wife, respectively) are husband and wife and resided during the taxable years 1954, 1955, and 1956 in Newton, Massachusetts. They filed joint income tax returns for those years with the district director of internal revenue, Boston Massachusetts. United Aniline Company, a Massachusetts corporation, filed its income tax returns for the taxable years 1954, 1955, *250 and 1956 with the district director of internal revenue, Boston, Massachusetts. During the years in question it was engaged in the business of manufacturing and processing chemicals and dyestuffs for sale to textile mills and tanneries. Its principal office was in Norwood, Massachusetts, a distance of 18 miles from Boston. Aniline is the outgrowth of a sole proprietorship started by Aronson in 1916. During 1954, 1955, and 1956, Aronson was president and treasurer of Aniline and owned a majority of its stock. The remainder of Aniline's stock in those years was owned by Aronson's son, James, who was also an employee of Aniline during the years in question. During those years Aniline was engaged in a highly competitive business, facing competition from industrial giants such as DuPont, as well as from a number of smaller companies. The customer price for the products sold by Aniline did not vary much from manufacturer to manufacturer and, consequently, Aronson felt that "winning friends" and "influencing people" were essential elements to Aniline's success. In the early 1930's, Aronson learned that a direct competitor and a customer of Aniline's had acquired yachts and were using them *251 to entertain their customers and prospective customers. As a result of these facts and in the hope that its business would benefit thereby, Aniline purchased a pleasure boat in 1934 and has always owned and operated a boat since that time, except for a short period during World War II. In 1949 Aniline purchased the motor launch Col. H. W. Benham, which it subsequently renamed Penguin, from the United States Government for $10,001.23. The Penguin was built in 1928 and was 70 feet in length. Aniline made improvements costing $8,000 in preparing it for use. On its income tax returns for the years 1954, 1955, and 1956 Aniline claimed deductions for the cost of operation, insurance, and salaries and for depreciation on the Penguin, in the total amounts of $18,144.52, $19,893.80, and $16,903.22, respectively. Respondent determined that 50 percent of those amounts were not deductible business expenses of Aniline, but rather were expenses incurred for the personal benefit of Aniline's majority stockholder, Aronson, and were taxable as income to Aronson. During the years involved the Penguin was used mostly on weekends during the boating season, which usually started in May and ended in September. *252 At different times there were guests aboard the Penguin who were business competitors and, to avoid jealousy and friction, a regular "guest logbook" which the guests might thumb through was not maintained aboard the Penguin. Instead Aronson kept a handwritten list of what he considered the business guests entertained aboard the Penguin, and at the end of each season he had a secretary at Aniline make a typewritten copy of this list. The list included the names of the guests and the dates they were aboard the Penguin. All of the individuals whose names appear on these lists were either executives or owners of companies which were in the textile or tannery business. During the period April 30 through August 31, 1954, approximately 15 different guests of this description were entertained aboard the Penguin on approximately 45 different occasions; during the period May 28 through September 24, 1955, approximately 30 different guests of this description were entertained on approximately 51 different occasions; and during the period May 28 through October 14, 1956, approximately 23 different guests of this description were entertained on approximately 45 different occasions. These guests *253 were usually accompanied by their wives, and Aronson's wife was also usually aboard and acted as hostess. The home port of the Penguin during each of the years in question was Boston. On several occasions in each of the years in question the Penguin made trips to ports distant from its home port where some of these guests were entertained aboard the Penguin. During some of these trips Aronson and his wife were the only persons aboard other than the crew. Aronson, with guests aboard, took the Penguin on an extended trip (about 3 weeks) to Maine each year. The Penguin was occasionally used by both Aronson and his son for solely personal reasons when no business associates were aboard. It was also used 1 day each year for an outing for certain of Aniline's employees, and on at least one occasion was taken to Atlantic City during a convention of the American Association of Textile Chemists and Colorists, and a group of people attending the convention were entertained aboard the vessel. Not more than 50 percent of the use of the Penguin during the years 1954, 1955, and 1956 was related to Aniline's business. The remaining use of the Penguin was for the personal benefit of Aronson. During *254 the years 1954, 1955, and 1956 Aniline had customers throughout the eastern part of the United States, Canada, Central America, and South America, and Aronson, in the ordinary course of Aniline's business, made trips to these areas. Aronson traveled to Mexico in 1954 and to South America for 2 1/2 months in 1955 where he sought to promote sales of Aniline's products. Aronson's wife accompanied him on his trip to South America in 1955 but no part of her expenses were defrayed by Aniline. During the taxable years 1954, 1955, and 1956 Aniline charged to the account on its books captioned "Travel, Louis Aronson" the sums of $6,536.50, $6,859.69, and $6,519.51, respectively. These sums were disbursed by Aniline in each of these years as follows: Paid to -
1954
1955
1956
Louis Aronson
$5,658.56
$5,871.27
$6,362.81
Trans World Airlines
877.94
Hotel Gramercy Park
133.42
Moore-McCormack Line
855.00
New York Central R.R.
95.70
Foley Travel Agency
61.00
Total
$6,536.50
$6,859.69
$6,519.51 Those sums paid to airlines, hotel, shipping lines, and travel agencies were for Aronson's travel. Aniline deducted the above amounts as travel expense in the years indicated. Respondent determined that these expenditures were *255 deductible by Aniline only to the extent of $4,976.50, $5,039.69, and $4,959.51, respectively, and determined that the remaining amounts of $1,560, $1,820, and $1,560 were personal income to Aronson in 1954, 1955, and 1956, respectively. In each of the years here involved, Aronson maintained weekly expense books - with daily entries - in which he entered expenses that he incurred. Expense entries in these books were for breakfasts, lunches, dinners, automobile travel, taxis, streetcars, telephone, telegraph, tips, refreshments, automobile fuel and maintenance, drysalters conventions, golf, and liquor. Aronson turned in these expense books to Aniline at the end of each week. The total amount recorded in Aronson's expense books in 1954 plus the amount of direct payments made by Aniline to the Trans World Airlines was $466.26 more than the amount deducted by Aniline for Aronson's travel in 1954. The total amount entered on Aronson's expense books in 1955 plus the amounts of direct payments made by Aniline to the Moore-McCormack Line and to the Hotel Gramercy Park for Aronson's travel was $134.27 less than the amount deducted by Aniline for Aronson's travel in 1955. The total amounts *256 entered on Aronson's expense books for 1956 plus the direct payments made by Aniline to the Foley Travel Agency and to the New York Central Railroad for Aronson's travel was $113.84 more than the amounts deducted by Aniline for Aronson's travel in 1956. There were numerous entries in the expense books in each year for luncheons, dinners, and refreshments, with the notation that they were the expenses of two or more individuals. Many of these entries had the names of people in the textile or tannery business noted next to them, but there were also a number of these entries with the names of unidentified individuals noted next to them. Aronson's expense books for 1954, 1955, and 1956 set forth entries totaling approximately $310.37, $337.24, and $904.75, respectively, for which there is no explanation of their relationship to Aniline's business. In each of the years 1954, 1955, and 1956 Aronson entertained representatives of the textile and tannery businesses in his home. On such occasions he entered on his expense books the cost of the food and drink that was consumed by him and his wife as well as that consumed by his guests and their wives. There were entries in Aronson's expense *257 books for 1954, 1955, and 1956 for luncheons, dinners, and refreshments, totaling approximately $455, $596.30, and $236.95, respectively, with the notation "Mr. & Mrs. Moses." Moses, in addition to being the president of a textile company was also an old acquaintance and close friend of Aronson. There were entries in 1954, 1955, and 1956 for luncheons, dinners, and refreshments, totaling $254, $242, and $359, respectively, with the notation "Mr. & Mrs. Hoffman." Hoffman, in addition to being an influential employee of a textile company, was also an old acquaintance of Aronson. Aronson's wife was usually present when Aronson entertained these two individuals and their wives. These expense entries included the cost of food and drink for Aronson and his wife as well as their guests. Not more than $4,976.50 in 1954, $5,039.69 in 1955 and $4,959.51 in 1956 of Aronson's travel expenses paid by Aniline were for expenses related to the business of Aniline. The amounts of $1,560 in 1954 and 1956, and $1,820 in 1955 of Aronson's travel expenses paid by Aniline were for Aronson's personal benefit. Aniline paid to Aronson and deducted on its income tax returns as compensation to officers in the *258 years 1954, 1955, and 1956, the amounts of $15,250, $13,750, and $15,000, respectively. These amounts were the only amounts reported by Aronson on his personal income tax returns as having been received by him from Aniline for his services in those years. Aniline deducted from its income tax returns in the years 1954, 1955, and 1956, the amounts of $121.80, $96.63, and $124.65, respectively, representing the local service charges for a telephone in Aronson's home. Aniline deducted in the same years the amounts of $943.32, $1,475.28, and $1,708.34, respectively, as the cost of operation and the depreciation of a corporate owned automobile. This automobile was the only automobile Aronson used, and he used it in both the pursuit of Aniline's business and for his personal use. Respondent determined that these amounts were not deductible by Aniline and included these same amounts in the personal income of Aronson for those years. Aronson conceded at the trial of these proceedings and on brief that the above amounts were includible in his personal income as determined by respondent. Aniline, however, contends that those amounts were deductible as compensation to Aronson for services rendered *259 in each of those years. The above amounts were not additional compensation to Aronson. In 1954 Aniline leased from a related corporation for a term of 5 years a building in Norwood, Massachusetts, for use in its business. This building was only a "shell" when it was leased and Aniline, in adapting it for use in its business, made improvements in 1954 costing $14,017.90, and in 1955 costing $4,402.66. These improvements included comenting and fireproofing floors, installing plumbing and electric improvements, painting, erecting office partitions, and other construction necessary to adapt the building to Aniline's business. Aniline uses acids which deteriorate cement, metals, and paints in the ordinary course of the business conducted in this building. Aniline has recemented the floor in this building since 1954, and this recementing was made necessary in some part by the corrosive effect of the acids used by Aniline. Aniline has also made other repairs and replacements of an unexplained nature in this building since 1955. Aniline amortized the cost of the improvements made to this building in 1954 and 1955 over the 5-year period of its lease, using the straight-line method, and deducted *260 as depreciation on its tax returns for 1954, 1955, and 1956 the amounts computed in this manner. Respondent determined that the improvements should be depreciated for Federal income tax purposes over a period of 20 years, which he determined was their useful life. At trial, Aniline's counsel conceded that the improvements should be depreciated over their useful life but contended that the useful life of the improvements was 10 years. Aniline still occupied and used this building in its business on February 8, 1961, the time of this trial. The useful life of the improvements on this building was 20 years. The due date for filing of Aniline's corporate income tax return for the year ending December 31, 1956, was on March 15, 1957. The envelope in which the return was mailed to the district director of internal revenue, Boston, Massachusetts, was postmarked March 20, 1957. The return was stamped "received" by the district director with the date March 25, 1957. Aniline's tax return for 1956 was dated February 19, 1957, and the signatures of the "clerk" of the corporation and of the individual preparing the return appear thereon. On March 14, 1957, Aronson signed a check, payable to the *261 district director of internal revenue, in the amount of the tax due as computed on the return. Aronson put the return and the check in the usual place for outgoing mail on March 14 but does not know what happened to them except that they were removed from his office. At that time an employee of Aniline was responsible for handling Aniline's outgoing mail and was supposed to see that it was deposited each night at the Norwood Post Office, a distance of 18 miles from Boston. In a letter dated May 6, 1957, respondent notified Anline that its tax return for 1956 had not been filed on time and that an addition to tax would be imposed if a reasonable cause was not established. Aniline, in a statement signed and sworn to by Aronson and mailed to the district director on May 16, 1957 stated that - This return together with payment was mailed from our office in Norwood on March fourteenth. We are at a loss to understand why it did not reach your office until March twenty-fifth. Respondent rejected this explanation and assessed an addition to tax, pursuant to section 6651(a), of 5 percent. Aniline's failure to file its 1956 return on time was due to reasonable cause and not to willful neglect. *262 Opinion Issue 1. Admissibility of Logbooks A preliminary issue before the Court is petitioners' motion to strike from the evidence two logbooks which purport to be the logs of the motor launch Penguin for the years 1955 and 1956, and all testimony in the record concerning them. The logbooks were brought to the trial by Aronson, pursuant to respondent's subpoena for Aniline to produce the books and an officer of the corporation who could testify as to them. The logbooks contain fairly regular daily entries for the months June through September for the years 1955 and 1956. The entries appear to have been made by various captains of the Penguin, none of whom was an employee of Aniline at the time of trial and none of whom was produced as a witness. Aronson testified that he had made none of the entries, knew nothing about the logbooks until they were brought to his office by the revenue agent, and had never instructed anyone to keep them for Aniline. No further evidence was offered to identify the logbooks or explain the purpose for the entries therein. These logbooks are hearsay and excludible from evidence unless they conform to one of the exceptions to the hearsay rule. Palmer v. Hoffman, 318 U.S. 109 (1943); *263 5 Wigmore, Evidence, secs. 1360 et seq. (3d ed. 1940); 2 Jones, Evidence, sec. 268 (5th ed. 1958). It is respondent's contention that these logbooks were admissible pursuant to the "business record" exception to the hearsay rule and that a "ship's logbook is clearly an entry made in the regular course of business, and if the entrant is deceased, or otherwise unavailable, it is admissible under the exception to the hearsay rule for such statements." Respondent also argues that the logbooks are admissible as an admission against interest. Section 1732 of the United States Code provides for the admission as evidence of business records which are otherwise excludible by the hearsay rule. 28 U.S.C. sec. 1732 (1950). [2] *264 The party wishing to introduce records pursuant to that section (respondent here) has the burden of showing that the records fulfill the qualifications of a "business record" as defined in that section. Standard Oil Company of California v. Moore, 251 F. 2d 188 (C.A. 9, 1957); see also Palmer v. Hoffman, supra; Smith v. Bear, 237 F. 2d 79, 89 (C.A. 2, 1956).
The purpose of the business records rule was to eliminate the technical requirements attendant to the introduction into evidence of certain business records which, although relied on in the industrial and business world, were excluded from evidence in court by the hearsay rule unless expensive and time-consuming technical requirements were satisfied. Palmer v. Hoffman, supra. However, the statute and the cases require that the record sought to be introduced be made in the regular course of business, 28 U.S.C. sec. 1732 (1950), and "pursuant to established company procedures for the systematic or routine and timely making and preserving *265 of company records." Standard Oil Company of California v. Moore, supra at 215; Palmer v. Hoffman, supra; Smith v. Bear, supra. There is no evidence that the logbooks here involved were maintained by Aniline in the regular course of its business, but rather the evidence indicates the contrary. Aronson testified that he was the present employee of Aniline who was most qualified to testify concerning the books, and his testimony was that he had never seen them until an Internal Revenue agent placed them on his desk. There is no evidence that the logbooks were kept through company policy or order, or that they were utilized or relied on by Aniline in conducting any phase of its business. The fact that the logbooks were found on the Penguin and purported to be that boat's log is not sufficient evidence that Aniline authorized or even expected that such logbooks be kept. Respondent contends, however, that a ship's log by its very nature is clearly an entry made in the regular course of business. If the Penguin had been a Government or merchant vessel, or if it had been shown that the captain was required to keep a log containing the names of all passengers on the boat, there might *266 be some color to this contention. [3] But on the evidence presented here, we do not believe these logbooks are admissible under the business records rule, and even if technically admissible under that rule they would be of no value to the Court on the issue for which they were offered, being to prove that Aronson often used the boat without having business associates aboard, without some showing that the logbooks were supposed to contain a record of all passengers who were aboard. Respondent contends in the alternative that the logbooks are admissions against interest and, therefore, are admissible under that exception to the hearsay rule. This argument is also without merit as the entries were not made by either of the petitioners nor were they made pursuant to any authorization of the petitioners in this case. Gordon v. Thomas, 70 F. 2d 752 (C.A.D.C. 1934); 4 Wigmore, Evidence secs. 1069 et seq. (3d ed. 1940). Petitioners' *267 motion to strike is granted and the logbooks and testimony therefrom have not been considered in deciding this case. Issue 2. Deductibility of Penguin Expenses On its tax returns for the years 1954, 1955, and 1956, Aniline claimed as deductions the operating expenses, insurance, salaries, and depreciation on its motor launch Penguin in those years. Respondent determined that 50 percent of those amounts in each of the above years were not deductible business expenses of Aniline, but rather were expenses and depreciation incurred for the personal benefit of Aniline's majority stockholder, Aronson. Aniline contends that the total costs and depreciation of the Penguin in each year were incurred in the ordinary and necessary course of its business and were fully deductible by it. Section 162 allows "as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." In each case it is a question of fact as to whether an expense was incurred or paid in the ordinary and necessary course of business, Welch v. Helvering, 290 U.S. 111 (1933), Louis Boehm, 35 B.T.A. 1106 (1937), and the burden of proving that it was is on the *268 taxpayer, Welch v. Helvering, supra.An expense is ordinary if it is a "normal and natural response under the specific circumstances" in which the taxpayer finds himself. Robert Lee Henry, 36 T.C. 879 (1961). An expense is necessary if it is appropriate and helpful "to the taxpayer's business." Welch v. Helvering, supra; Robert Lee Henry, supra.There must be a proximate - rather than merely a remote or incidental - relationship between the claimed expense and taxpayer's business. Robert Lee Henry, supra; Ralph E. Larrabee, 33 T.C. 838 (1960); Eugene H. Walet, Jr., 31 T.C. 461 (1958), affirmed per curiam 272 F. 2d 694 (C.A. 5, 1959); Louis Greenspon, 23 T.C. 138 (1954), affirmed on this point 229 F. 2d 947 (C.A. 8, 1956). The only witness called by petitioners, except Aniline's bookkeeper, was Aronson. His testimony is to the effect that Aniline, in a competitive business, first bought a boat in 1934 because Aronson thought that entertaining customers would help Aniline's business, and that Aniline has continued to own and operate a boat for that purpose since that time. In Aronson's words, the Penguin "was a tremendous asset in building customers and building up good will, *269 attracting customers and, to be perfectly candid, the best salesman we ever had." The evidence also shows that during the years involved Aronson and his wife frequently entertained guests aboard the Penguin who were executives of woolen mills and in the tannery business. Aniline did business with both industries, but Aronson's testimony simply identified the guests as being in the textile or tannery business and identified only one company with whom Aniline actually did business. Petitioners' evidence is quite general and there is nothing in the record to show a direct relationship between the use of the boat and the conduct of Aniline's business. On the other hand, the evidence shows that Aronson and his family used the boat occasionally when no business guests were aboard and that in each of the years here involved Aronson and his wife took an extended cruise (about 3 weeks) from Boston to Maine with no showing of any business purpose except that they had guests aboard who were in the textile or tannery business. Many of the "business" guests were also close personal friends of the Aronsons. On most occasions the wives of the "business" guests and Aronson's wife were also aboard. *270 Except for one outing a year for employees of Aniline, the boat appears to have been used for the sole purpose of entertaining Aronson or Aronson and his guests. We think it is quite evident from the record as a whole that the Aronsons had a great deal of personal pleasure out of using the boat, with or without guests, and that the boat was maintained and operated at least equally as much for their personal benefit as for any direct or indirect benefit that Aniline's business might receive therefrom. We recognize that there may have been some business reason for Aniline to operate this boat, and that a proper proportion of the expenses incident thereto may be deductible as ordinary and necessary business expenses of Aniline. E. E. Dickinson, 8 B.T.A. 722 (1927); Trustee Property No. 4, 21 B.T.A. 627 (1930); Cleveland-Sandusky Brewing Corp., 30 T.C. 539 (1958). Respondent tacitly admits this by allowing Aniline to deduct one-half of the costs. But this does not mean that the entire cost of maintaining and operating the boat is deductible by it. Expenditures for entertainment can serve the dual purpose of promoting the business of the corporation and providing what are in the nature *271 of personal living expenses for its controlling stockholders, particularly where, as here, the entire use of the boat was under the direction and control of the controlling stockholder. Where such is the case, we find nothing in the present law which prevents allocating a part of that expense to deductible business expenses of the corporation and the remainder to nondeductible expenses of the corporation. Accord, Challenge Manufacturing Co., 37 T.C. - (Jan. 10, 1962); Wm. T. Stover Co., 27 T.C. 434 (1956); Ralph E. Larrabee, supra; Eugene H. Walet, Jr., supra; Louis Greenspon, supra.But where the entertaining is done by the controlling stockholder of the corporation, we think the corporation must carry a heavy burden of proving what portion thereof was proximately related to its business and that such expenditures were ordinary and necessary costs of its particular business. On the evidence presented here, we do not think Aniline has shown that it is entitled to deduct any more of the cost of maintaining and operating the Penguin than the 50 percent already allowed it by respondent. We hold for respondent on this issue. Compare Challenge Manufacturing Co., supra; Wm. T. Stover Co., supra. *272 Issue 3. Deductibility by Aniline of Aronson's Travel and Entertainment Expenses. Aniline's general ledger account designated "Travel, Louis Aronson" for the years 1954, 1955, and 1956 set forth entries totaling $6,536.50, $6,859.69, and $6,519.51, respectively, which sums Aniline claimed as deductions on its income tax returns for those years. Respondent determined that the expenditures represented allowable business deductions to the extent of $4,976.50, $5,039.69, and $4,959.51 only, and included the remaining amounts of $1,560, $1,820, and $1,560 in the personal income of Aronson for 1954, 1955, and 1956, respectively, on the ground that those expenditures were for the personal benefit of Aronson. The entries in the account represent either direct cash disbursements to Aronson or direct payments to airlines, hotel, or travel agencies for Aronson's travel as set forth in our Findings of Fact. In support of its contention that the entire amount of these expenses were deductible by it, Aniline introduced into evidence the weekly expense books kept by Aronson in each year, which he submitted weekly to Aniline to substantiate his expenses, the details of which are set out in our Findings *273 of Fact. Much that has been said above in the discussion of the first issue is also applicable here. Expenses incurred for trave l and entertainment by a corporate stockholder-officer must be proximately related to the corporate business if they are to qualify as business deductions, and the burden of proving that they are so related is upon the corporation. Welch v. Helvering, supra; Louis Boehm, supra; and Louis Greenspon, supra. Unexplained expense entries in a corporate officer's expense book do not, without further extrinsic evidence, establish such a relationship. William O'Dwyer, 28 T.C. 698 (1957), affd. 266 F. 2d 575 (C.A. 4, 1959), certiorari denied 361 U.S. 862 (1959). Aronson testified that in each of the years in question he entertained representatives from Aniline's customers or prospective customers in his home and entered the costs incurred on such occasions in the expense books. These expense entries included the cost of food and drink for himself and his wife, as well as that for the guests and their wives. Expenses incurred in the home for entertainment of business associates are subject to careful scrutiny, and clear and certain proof that such occasions *274 were commercially motivated rather than socially motivated is required. Louis Greenspon, supra; Reginald Denny, 33 B.T.A. 738 (1935); Ned Wayburn, 32 B.T.A. 813 (1935). Proof of this quality with respect to the home entertainment is lacking in this record. There are numerous entries in Aronson's expense books in 1954, 1955, and 1956 for lunches, dinners, and refreshments, with the notation "Mr. & Mrs. Moses" or "Mr. & Mrs. Hoffman." In addition to being in the textile business, both Moses and Hoffman were old acquaintances, of Aronson. Aronson's wife was usually present on such occasions, and the conclusion that these get-togethers were motivated by purely personal reasons is as plausible as the conclusion that they were motivated by the necessities of business. Richard A. Sutter, 21 T.C. 170 (1953); James Schulz, 16 T.C. 401 (1951). The persuasiveness of Aronson's expense books is further limited to some extent by the fact that in each of the years in question, the amounts of advances and reimbursements made to Aronson by Aniline were not consistent with the total amount of expenses entered in these books. The burden of proving that the total amounts set forth in the account *275 "Travel, Louis Aronson" were expenditures incurred in the ordinary and necessary course of its business was upon Aniline. The record is not persuasive that such was the case, nor is there evidence from which we could find that the amounts disallowed by respondent were arbitrary or unreasonable. Consequently, respondent's determination that the amounts charged to the account "Travel, Louis Aronson" in the years 1954, 1955, and 1956 represent deductible business expenses of Aniline only to the extent of $4,976.50, $5,039.69, and $4,959.51, respectively, is sustained. Aniline has not contended or proved that any of the amounts paid to or on behalf of Aronson in those years were intended as additional compensation to him for services rendered and, hence, no portion thereof is deductible as compensation of officers. Issue 4. Deduction by Aniline of Aronson's Telephone and Automobile Expenses. Respondent determined that the deductions claimed by Aniline as telephone and automobile expenses for the years here involved and in the amounts as shown in our Findings of Fact were not allowable business deductions. Respondent also determined that these amounts were includible in the personal income *276 of Aronson for each of those years. Aronson conceded at trial that these amounts were includible in his income for those years; consequently, the only issue before the Court is whether Aniline is entitled to deduct these amounts as ordinary and necessary expenses of its business. The telephone expenses in issue were the local service charges for a telephone in Aronson's home. The automobile, in connection with which the expenses and depreciation here involved were incurred, was a corporate owned automobile which Aronson used both in the pursuit of Aniline's business and for his personal use. Petitioners in their brief stated that "such telephone and automobile expense presents a mixed picture, that is, of expenditures partly for the business of United Aniline Company and partly for the personal convenience of Louis Aronson," and that "an attempt to disentangle the business element from the personal would have presented great practical difficulties." Petitioners further state on brief that because of these factors and because the amounts in question were not large, it had been conceded at trial that these amounts were income to Aronson in those years. Aniline contends, however, that *277 these amounts were deductible in each year, but as additional compensation to Aronson for services rendered. Aniline paid to Aronson and deducted on its corporate income tax returns as compensation to officers the amounts of $15,250, $13,750, and $15,000 in the years 1954, 1955, and 1956, respectively. These amounts were the only amounts deducted by Aniline in those years as compensation to officers and these were the only amounts reported by Aronson on his personal income tax returns for each of those years as having been received from Aniline for his services. There is no evidence whatsoever in the record that Aniline was under any obligation to pay Aronson any more than these amounts for his services or that the maintenance of this automobile and payment of these telephone expenses were intended to be compensation to him. Aronson's omission of any of these amounts on his income tax returns for those years indicates that he did not consider them as compensation for services rendered. It would seem, in essence, that Aniline, because of the practical difficulties it would have in proving that even a portion of these amounts was deductible as business expense, is asking the Court to *278 ignore the true circumstances under which they were paid and to treat them as payments for something they were not intended to be, so that the total amounts would be deductible. Similar proposals have been rejected by this Court in the past. J. J. Kirk, Inc., 34 T.C. 130 (1960), affd. 289 F. 2d 935 (C.A. 6, 1961); Roehl Construction Co., 17 T.C. 1037 (1951). There is no evidence to support petitioner's contention here. Respondent is sustained on this issue. Petitioners contend on brief that respondent has improperly failed to characterize the income allegedly received by Aronson from the payment by Aniline of these telephone and automobile expenses, and that such a characterization is necessary to determine Aronson's tax liability. Aronson's concession at trial and on brief that these amounts are includible in his income for each of the years in question stifles any consideration of this issue by the Court. Marc Eidlitz & Son, Inc., 18 B.T.A. 187 (1929). These amounts are includible in his gross income pursuant to the provisions of section 61(a). Furthermore, the petitions filed in this Court by both Aniline and Aronson do not raise any issues which require or make appropriate *279 a characterization of this income. Frank Polk, 31 T.C. 412 (1958), affd. 276 F. 2d 601 (C.A. 10, 1960); Lynne Gregg, 18 T.C. 291 (1952), affirmed per curiam 203 F. 2d 954 (C.A. 3, 1953). Issue 5. Rate of Depreciation on Improvements. Because of petitioners' concession at the trial that certain improvements made by Aniline during the years 1954 and 1955 to leased property should be depreciated over their useful life rather than amortized over the term of the lease, the only question remaining is the useful life of the improvements, which respondent determined to be 20 years. Aniline contends that the useful life of the improvements was 10 years. Respondent's determination of the useful life of these improvements carries with it a presumption of correctness, and Aniline's evidence is not persuasive that it should be upset. Louis Boehm, supra. The improvements in question were made to the shell of a building which Aniline leased for use in its business, and they included erecting office partitions, painting, installing plumbing and electric improvements, cementing and fireproofing floors, and other improvements which adapted the building to Aniline's business. Acids which cause *280 deterioration to metals, paints, and cement were used by Aniline in its business, but the type of damage, the time over which it would occur, and the extent of such damage to these particular improvements is not clear from the record. Aronson, whose testimony was the only evidence presented on this issue, confined his testimony almost exclusively to the deterioration the acids caused to the cement floors, and his estimate of the useful life of the improvements of "Ten years, possibly" seemed to be predicated on the deterioration rate of these floors and on what someone told him about the probable life of the roof. The roof, as far as we know, was in no way related to the improvements made by Aniline. The persuasiveness of Aronson's testimony was further sapped by his lack of familiarity with the improvements made in 1955, which he manifested on cross-examination. Aniline has failed to provide sufficient evidence for the Court to make its own determination of the useful life of the improvements, nor has it shown that respondent's figure of 20 years is excessive. Therefore, respondent's determination must be sustained. Keller Street Development Co., 37 T. C. - (Dec. 26, 1961); Hoyt B. Wooten, 12 T.C. 659 (1949), *281 affd. 181 F. 2d 502 (C.A. 6, 1949). Issue 6. Addition to Tax for Late Filing. Aniline's corporate income tax return for 1956 was due on March 15, 1957. The return was stamped "received" in the district director's office in Boston on March 25, 1957, and the envelope in which it arrived bore a March 20, 1957, postmark. Respondent determined an addition to tax was due under section 6651(a). [4] Aniline contends its failure to file a timely return was due to "reasonable cause and not due to willful neglect," which would absolve it from the addition to tax under section 6651(a), if proven. The 1956 return indicates on its face that it was prepared February 19, 1957. Petitioner attached as an exhibit to its reply brief a check drawn by Aniline and signed by Aronson dated March 14, 1957, payable to *282 "District Director of Internal Revenue" in the amount of $2,004.70, which appears to be the tax paid with the return. Aronson testified that he signed this check on March 14, 1957, that it was "put in the regular mail and the girl sees to it each night that the mail is deposited in the Norwood Post Office," that he does not know "who put it in the envelope, somebody did, it went outside the office." Aronson's testimony is supported by, or was based on, an affidavit he filed with respondent on May 16, 1957, at respondent's request, in explanation of the late filing. Aronson testified that the girl who handled the mail in 1957 was no longer employed by Aniline, and neither she nor Aronson's son, who signed the return, testified. While petitioner's evidence on this point is not as complete as it might be, we believe from the evidence presented that the return and check were prepared and signed prior to March 15 and, in accordance with regular office routine, would have been mailed in time to reach Boston by March 15. Through inadvertence the return was not mailed on time. There is no evidence of willful neglect. We hold for petitioner on this issue. Carnie-Goudie Manufacturing Co., 18 B.T.A. 893 (1930), *283 modified with respect to another issue 24 B.T.A. 679 (1931); Herbert Marshall, 41 B.T.A. 1064 (1940); Philad Co. of Delaware, 47 B.T.A. 565 (1942). Issue 7. Addition of Disallowed Corporate Deductions to Aronson's income. Respondent determined that 50 percent of the amount deducted by Aniline for operation and maintenance of the Penguin (including depreciation and insurance), and the amounts of Aronson's travel expenses disallowed as a deduction to Aniline, were additional income to Aronson in each of the years involved for the reason that the expenditures were made by Aniline to and for the personal benefit of Aronson and accordingly represent income to him within the meaning of section 61. Petitioners, in addition to claiming that all of these expenditures were business expenses of Aniline, claim that even if the total expenditures were not deductible by Aniline, inclusion of any of these amounts in Aronson's income would be contrary to this Court's decision in Hal E. Roach, 20 B.T.A. 919 (1930). We have found above that at least 50 percent of the use of the Penguin was for the personal benefit of Aronson and was not related to the business of Aniline, and that $1,560 of Aronson's *284 travel expenses in each of the years 1954 and 1956, and $1,820 of those expenses in 1955 paid for by Aniline were for the personal benefit of Aronson and were not related to the business of Aniline. So petitioners' principal argument fails. Petitioners' contention that to tax any of the disallowed corporate deductions to Aronson would be contrary to our decision in the Roach case is without merit. In that case the Board found that the yacht was used for business purposes of the corporation and for the pleasure of various persons other than Hal E. Roach, the president of the corporation, and that no appreciable part * of the amounts spent on the yacht by the corporation were for the personal benefit of Roach and could not be constructively attributed to him. Such is not the case here, where we have found that a part of the corporate expenditures was for the personal benefit of Aronson. The facts in this case are very smilar to those in Challenge Manufacturing Co., supra, and that case and the cases cited therein are controlling *285 on the issue here presented. With respect to the travel expense items, those represent cash payments by the corporation, either directly to Aronson or for his benefit, for expenditures for his personal benefit and are income to him under section 61. With respect to the expenditures for the Penguin, we held in Challenge Manufacturing Co., and the other cases cited therein, that the making available of corporate owned facilities to stockholders for their personal benefit may constitute taxable income to the stockholders in amounts equal to the fair value of the benefits involved. As in that case, there is no evidence before us here that convinces us that the benefits conferred upon Aronson had a fair value less than the amounts (including depreciation and insurance) properly disallowed to the corporation. Florence H. Griffith, 35 T.C. 882 (1961), cited by petitioners in support of their argument that the premiums for insurance on the Penguin cannot be income to Aronson, is inapposite. We hold that the amounts disallowed as deductions to the corporation in each of the years here involved for the Penguin and for Aronson's travel expenses are includible in Aronson's income in the respective *286 years. Decisions will be entered under Rule 50. Footnotes
1. All section references are to the Internal Revenue Code of 1954 unless otherwise noted.↩
2. "In any court of the United States and in any court established by Act of Congress, any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of such act, transaction, occurrence, or event, if made in regular course of any business, and if it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event, or within a reasonable time thereafter. * * *
"The term 'business,' as used in this section, includes business, profession, occupation, and calling of every kind. * * *"↩
3. There is early judicial authority to the effect that even if admissible, they could be used only to prove facts required by law to be recorded in the log. Jones v. The Phoenix, Fed. Cas. No. 7,489 (1800); United States v. Gibert, Fed. Cas. No. 15,204 (1834).↩
4. SEC. 6651(a)↩. Addition to the Tax. - In case of failure to file any return required under authority of subchapter A of chapter 61 * * * unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month * * *
*. The word "none" was deleted and the words "no appreciable part" were added by an official order of the Tax Court dated May 24, 1962 and signed by Judge Drennen↩.