RALPH E. LARRABEE AND IRENE C. LARRABEE, HUSBAND AND WIFE, AND DOING BUSINESS AS L. & F. MACHINE CO., A FICTITIOUS NAME, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 67725. Filed February 9, 1960.

*John van Aalst, Esq.,* for the petitioners.
*Cyrus A. Johnson, Esq.,* and *Richard W. Janes, Esq.,* for the respondent.

**OPINION.**

RAUM, *Judge:* Petitioners contend that the cost of owning and operating the *Goodwill* during the year 1953 should be allowed as ordinary and necessary business expense incurred in carrying on the business of the L. & F. Machine Co., a business which was owned and operated by petitioner as sole proprietor. They urge that the *Goodwill* was used primarily for entertainment of business friends, potential customers, and others primarily for business reasons and with a view to profit, and that as a result the business of the L. & F. Machine Co. was increased during the year 1953. We do not agree.

The burden of proof was upon petitioners, and we do not believe on the evidence they have produced that the expenditures herein were incurred for business rather than personal reasons, or that there was any proximate relationship between the operation of the yacht and the L. & F. Machine Co. Without doubt, the *Goodwill* is a magnificent vessel, and petitioner obviously takes great pride in her. He testified: "When we were laying in Acapulco, even the President of Mexico's yacht took second place to her as far as beauty was concerned." Petitioner is a sportsman and yachtsman of renown. His interest in fishing appears on this record to

be more than casual, and the scrapbook in evidence shows the part played by the *Goodwill* in such activities. But even the fishing exploits were secondary to the Honolulu race, which dominated petitioner's activities in 1953 with respect to the yacht. Preparation for the race alone took some 4 months; the race itself lasted approximately 11 days, followed by a period of celebration, social activities, and return to Newport. The publicity relating to the race was considerable; but the newspaper articles were of the sort that would be of interest primarily to readers of the sports or social columns. The L. & F. Machine Co. was scarcely mentioned. And the film, upon which petitioner lays such stress, makes but a passing reference to the L. & F. Machine Co. We cannot seriously accept his contention that since the L. & F. Machine Co. was wholly owned by him, his publicity must be attributed to the business. The focus of the publicity was upon petitioner as a sportsman. We are not convinced that there was any substantial connection between the *Goodwill* and petitioner's business. In *Eugene H. Walet, Jr.*, 31 T.C. 461, affirmed 272 F. 2d 694 (C.A. 5), we said (at 471):

> Nor does the evidence show whether there was any proximate relationship between the expenditures and the alleged business. Certainly, the word "entertainment" is not a magic formula entitling one to deduction without inquiry as to whether the entertainment in question really had a significant bearing upon the conduct of the alleged business. The situation is one that is susceptible of gross abuse, and it is not too much to ask that one claiming such deductions show that the expenditures in question were genuinely related to the conduct of a business. We cannot say on the record before us that any of the claimed expenditures could qualify for deduction; accordingly, there is no occasion to make an approximation such as was indicated in *Cohan* v. *Commissioner*, 39 F. 2d 540 (C.A. 2). * * *

The situation here, even more than in the *Walet* case, is one that is susceptible of gross abuse. We view with skepticism, on this record, petitioner's testimony that the yacht was "put * * * in operation of entertaining my customers and potential people I thought would be influential in getting me acquainted with other people who had business * * *." His vague and general testimony that the business benefited from the operation of the yacht is far from the kind of evidence that is necessary to show a proximate relationship between the expenditures for the *Goodwill* and the business. Although there was an incomplete list of guests who were on board the yacht in 1953, very few of them appear on this record to have been connected in any way with customers of the L. & F. Machine Co. One name, that of Donald Douglas, Jr., associated in some undisclosed manner with the Douglas Aircraft Company, does appear prominently. He seems to have been an important member of the crew in the 1953 race to Honolulu, and petitioner

had designated him as sailing master for the 1959 race to Honolulu which was to begin on July 4, shortly after the trial herein. But there is no showing that Donald Douglas, Jr.'s activities in relation to the *Goodwill* reflected anything more than a mutual interest in sailing or racing. There is not even a suggestion that any business which the L. & F. Machine Co. might have obtained from the Douglas Aircraft Company was attributable, even in part, to the *Goodwill*.

No doubt petitioner's social and sporting activities revolving around the *Goodwill* may have cemented some friendships that might have resulted in some indirect benefits to his business. Such could be true of any social relationships. But the internal revenue laws allow as deductions only the "ordinary and necessary" expenses in connection with the conduct of a business, and, to be deductible, such expenses must be proximately related to such business. It is not enough that there may be some remote or incidental connection. To repeat, the burden of proof is upon the petitioner, and we cannot find on this record that the ownership and operation of the yacht *Goodwill* were sufficiently connected with petitioner's business to justify the classification of the controverted expenditures in whole, or in any part, as business expenses. Although the sales of the L. & F. Machine Co. increased sharply in 1951 and remained at approximately the same level for several years, it does not appear that such increase was attributable in any way to the *Goodwill* rather than to the effect of the Korean war.

After a careful consideration of all of the evidence, we have concluded and found as a fact that the *Goodwill* was not used during the year 1953 for the purpose of carrying on or promoting the business of the L. & F. Machine Co. We hold therefore that none of the costs of operating the *Goodwill* during that year qualifies as an ordinary and necessary business expense and that petitioners are not entitled to the deductions claimed for those costs and for depreciation on the yacht, winches, and sails.

*Decision will be entered for the respondent.*