W. D. Gale, Inc., a Michigan Corporation v. Commissioner. Joseph A. Schoenith and Mildred A. Schoenith, his wife v. Commissioner.
W. D. Gale, Inc. v. Commissioner
Docket Nos. 71453, 71454.
United States Tax Court
T.C. Memo 1960-191; 1960 Tax Ct. Memo LEXIS 99; 19 T.C.M. (CCH) 998; T.C.M. (RIA) 60191; September 15, 1960
*99 Held, petitioner corporation is not entitled to deduct as advertising expenses amounts incurred in the operation of racing boats. Held, further, some amounts expended by the corporation on its racing boat program are includible in gross income of the individual petitioners, one of whom was the corporation's president and major shareholder. Walter J. Murray, Esq., for the petitioners. Robert J. Fetterman, Esq., for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: The respondent determined deficiencies in the income tax of petitioners in these consolidated cases, as follows: Docket No.
Petitioner
Year
Deficiency
71453
W. D. Gale, Inc.
1953
$45,456.01
1954
14,166.96
1955
36,131.72
71454
Joseph A. Schoenith and Mildred A. Schoenith
1953
33,314.18
1954
28,313.56
1955
51,227.80
The question to be decided is whether petitioner, W. D. Gale, Inc., was entitled to deduct expenses incurred in connection with the operation of racing boats and if not whether the amounts expended constitute taxable income to Joseph A. Schoenith. Findings of Fact Some of the facts have been stipulated and are found accordingly. W. D. Gale, Inc., hereafter sometimes referred to as petitioner *101 or the corporation, is a Michigan corporation with its principal place of business in Detroit. It kept its books and reported its income on a calendar year accrual basis. It filed corporate income tax returns for the years in question with the district director of internal revenue at Detroit. Petitioners, Joseph A. Schoenith, hereinafter generally called Joe, and Mildred A. Schoenith, his wife, reside in Grosse Pointe Woods, Michigan. During the years in question they filed joint income tax returns with the district director of internal revenue at Detroit. W. D. Gale, Inc. is in the electrical contracting business in the Detroit area. An individual, W. D. Gale, incorporated the business in Delaware and licensed it to do business in Michigan. In 1941 the Delaware corporation was dissolved and reincorporated under the same name in Michigan with W. D. Gale owning about 97 1/2 per cent of its stock. Joe had been employed by the corporation as an electrical engineer for a number of years. In 1942 he acquired all of the corporation's stock and since that time he and his immediate family have held at least 97 1/2 per cent of it. In 1948 Joe became president of the corporation and took *102 over its complete direction and control. The name of the corporation remained unchanged. Immediately after the Second World War, between 1946 and 1949, the corporation's business expanded steadily, as shown by the following schedule: Year
Gross Sales
1946
$377,703.94
1947
474,600.34
1948
821,172.02
1949
966,465.70
Most of its business depended upon submitting bids for work to concerns in the Detroit area which were undertaking construction and remodeling projects or to contractors who were interested in subcontacting out various phases of construction contracts. Much of the bidding on jobs of the type the corporation did was invitational. Companies in the Detroit area which had recurrent need for specialized contractors maintained lists from which were taken the names of contractors to be invited to bid on a prospective job. Before being placed on these lists the corporation was investigated as to its reputation, ability to perform the required work and financial stability. Had it been found lacking in any important respect, in most instances it would not have been placed on the bidding lists. Among the most widely publicized and attended events in the *103 Detroit area are the powerboat races held on the Detroit River several times a year such as the Harmsworth, Silver Cup and Gold Cup races. Several hundred thousand spectators regularly line the closed course to view the races. The boats which participate in the largest and most popular class are designed solely for racing and are not used for any other purpose. These unlimited class boats are about 30 feet long, have a beam of about 10 feet, weigh two to three tons, are often powered by one or more aircraft engines which develop 1,500 or more horsepower and attain speeds well in excess of 100 miles per hour. In 1949 a boat of the type described above was purchased by Joe with corporate funds and it was named GALE I. This name was painted in large letters on her hull. It was first raced in 1950 in the Detroit area. During the next several years, including those here in question, the corporation purchased, or had built to its specifications, other boats of the same type and equipment necessary for their operation. Each boat carried the name GALE in large letters on her hull. Several of the boats had vertical fins mounted abaft of the driver's cockpit. On the boats so equipped "Reddi *104 Kilowatt", an electrical industry symbol, was painted on the fin. The corporation was the owner of all such boats and their accompanying equipment. Joe's son, Lee Schoenith, learned to drive the racing boats in 1950 when he was about 20 years old. Thereafter and during the years in question, with the exception of time spent in military service, Lee was a regular driver for the GALE boats. In 1954 he was elected to the Gulf Marine Racing Hall of Fame. The boats were raced with considerable success in Michigan and at other points throughout the country. The following schedule shows the location of some of the major races the GALE boats participated in during the years in question. Year
Location
Boat
1953
Seattle, Wash.
Gale II
Detroit, Mich.
Gale II
Washington, D.C.
Gale II
1954
Windsor, Ont.
Gale IV, V
Detroit, Mich. (twice)
Gale IV, V
Seattle, Wash.
Gale IV, V
Washington, D.C.
Gale IV, V
Elizabeth City, N.C.
Gale IV
Madison, Ind.
Gale IV, V
1955
Windsor, Ont.
Gale IV, V
Detroit, Mich. (twice)
Gale IV, V
Seattle, Wash.
Gale IV, V
Washington, D.C.
Gale IV, V
Polson, Montana
Gale V The year 1955 was a very *105 successful one, for in that year GALE V won the Gold Cup race in Seattle, the unlimited class powerboat's equivalent of baseball's World Series. The racing program resulted in considerable personal publicity for Joe as owner and for Lee as a consistently winning driver. Scrapbooks were kept in which were affixed news stories and pictures that appeared in daily newspapers in the Detroit area and throughout the country, feature items and pictures which appeared in several magazines, boating and trade publications and boat race programs. Most of the articles attributed ownership of the GALE boats to Joe individually, although a few described him as a Detroit electrical contractor. The name of W. D. Gale, Inc. almost never appeared in the articles in any context which would suggest that the corporation was owner or sponsor of the GALE boats. During the years in question, a picture of a GALE boat was used on the corporation's letterheads, envelopes, invoices and corporation checks. On some of these the slogan "You're ahead with GALE" was also used. Moving pictures were taken of the boats on several occasions. These were combined into a film of about 22 minutes' duration and were shown *106 to any professional or social groups which requested them. A leader on the film indicated that the corporation had furnished them. Joe and his son sometimes operated the projector and provided the narrative for the film. During the period from 1950 to 1955 the corporation's business expanded as shown by the following schedule: Year
Gross Sales
1950
$1,340,083.47
1951
1,776,952.04
1952
3,568,278.36
1953
2,586,633.64
1954
3,886,637.57
1955
5,838,065.68
On its tax returns for the years 1953, 1954 and 1955, the corporation deducted amounts expended for labor, repairs, depreciation and travel in connection with the program of boat racing undertaken by Joe and the corporation. Respondent, in the deficiency notice, disallowed expenditures claimed as deductions in connection with the operation of racing boats in the amounts of $40,817.21 for 1953, $39,115.35 for 1954 and $64,123.73 for 1955, stating that such amounts did not constitute ordinary and necessary business expenses under section 23 of the Internal Revenue Code of 1939 and sections 162, 165 and 167 of the Internal Revenue Code of 1954. Respondent determined deficiencies in *107 income tax for Joe in Docket No. 71454 for the years 1953, 1954 and 1955 by including in Joe's income the amounts which had been disallowed as corporate deductions for boat racing expenses, after eliminating certain items in 1953 and 1954 representing losses and gains on the sale of boats. The notice of deficiency states these racing expenses in the sum of $41,211.62 in 1953, $36,776.66 in 1954 and $64,123.73 in 1955 had been determined taxable income to Joe under section 22(a) of the Internal Revenue Code
1939 and section 61(a) of the Internal Revenue Code of 1954. Opinion The main issue in these consolidated cases is in Docket No. 71453 where the corporate petitioner contends that the boat racing program was undertaken at the outset and subsequently pursued solely as an advertising device, for the benefit of the corporation and that as such the amounts expended for this program are deductible by the corporation as ordinary and necessary business expenses pursuant to section 23(a)(1)(A), Internal Revenue Code of 1939, and section 162(a) of the Internal Revenue Code of 1954. The parties have agreed that there *108 is no question in the case concerning the amount of the deduction claimed by the corporation or its reasonableness in relation to gross sales, but rather only the availability of the claimed amounts as deductions. The burden was upon petitioner to show the proximate relationship between the boat racing program and the corporation's business. Since petitioner claims the expenditures were deductible as advertising expenses, its burden was to show the boat racing program as conducted during the years in question publicized its business, or was reasonably calculated to call public attention to its business in some manner that might reasonably be expected to produce some patronage benefit. Rodgers Dairy Co., 14 T.C. 66; James Schulz, 16 T.C. 401; Denise Coal Co., 29 T.C. 528; Ralph E. Larrabee, 33 T.C. 838. We do not believe the evidence produced satisfies petitioner's burden. Petitioner placed much reliance upon the fact that its business increased during the period of the boat racing program. This evidence is not of much value. Its business had increased during each of the four years prior to 1950, the year the boat racing program *109 was started. Advertising would be expected to produce increased business. But proof of increased business is not much proof that a certain expenditure was for advertising. The question still remains whether the expenditure was for a device or program reasonably expected to advertise. If this can be answered in the affirmative then, whether increased sales resulted or not, the expenditure is for advertising. We learn from this record that powerboat racing in the unlimited class is a sport that attracts some of the largest crowds that ever have gathered to witness a sporting event. It has been of great civic interest in Detroit, where anywhere from two to four hundred thousand people would jam the river banks to watch these powerful boats race. Races are also held in Seattle, Washington; Washington, D.C.; Buffalo, New York; Elizabeth City, North Carolina; New Martinsville, West Virginia and Madison, Indiana. They attract great crowds in all of these places. A Seattle newspaper reported that the crowd at the 1955 Gold Cup race (won by Gale V) was estimated at 500,000 people. Besides the crowd attending the races, many more were able to see or hear portions of the races through radio, *110 television and newsreel coverage. All of these races attracted national recognition as major sporting events and they received major coverage on the sports pages of newspapers. During the years 1949 through 1955 a total of five racing boats were either purchased or built by petitioner. They were named "GALE I" through "GALE V". When the GALE boats were first raced in 1950 a professional boat race driver was hired. In 1950 Joe Schoenith's son, Lee, also started driving the boats in races. Lee's racing over the years was interrupted by his military service but he continued until he was injured sometime after the years in question. During the years Lee drove the GALE boats he was elected three times to the Gulf Marine Racing Hall of Fame. The boats were not raced for money. Usually the winners received a cup, tray or some other similar trophy. In 1955 GALE V won the Gold Cup trophy, which was about two feet high. On it appeared the following inscription, "Won by Gale V, Driver, Lee Schoenith; Owner, Joe Schoenith". The inscriptions on the Silver Cup, the International Cup and the Edsel Ford Memorial trophy also named the owner as Joe Schoenith and the driver as Lee Schoenith. The *111 trophies are kept in the Yacht Club on display. The owner receives a replica of the trophy. As pointed out earlier, Joe Schoenith and his family have since 1942 owned at least 97 1/2 per cent of petitioner's stock. Joe is president. The GALE boats were purchased by the corporation but they were all registered with the American Power Boat Association in the name of Joe Schoenith and Joe was listed as the owner in racing programs. Joe explained the registration was in his name because the Association had a rule that no corporation could own or race a boat. Five scrapbooks containing clippings from newspapers, magazines, trade publications and race programs covering the period 1951 through 1955 were placed in evidence by petitioners. Over 400 pages in these scrapbooks were covered with clippings concerning the boat racing activities of the Schoeniths and the GALE boats; about 350 pages dealt with the years in question and contained over 500 news stories, magazine articles, published pictures and cut lines. After examining these scrapbooks and reading the articles it is clear the publicity the racing program produced identifies Joe as the owner and Lee as the driver of the GALE *112 boats. The focus of the publicity was upon Joe and his son Lee as sportsmen with most of the publicity appearing on the sports pages and some on the social pages. Sometimes the owner of the GALE boats is not mentioned but if the owner is named it is usually Joe Schoenith. Not a single article in 1953 or 1954 refers to petitioner as the owner or sponsor of the GALE boats and in 1955 there were only two such references, neither of which was in a Detroit newspaper. A few articles described Joe as an electrical contractor without mention of the corporate name. One article (Detroit News, May 6, 1954) states "Schoenith names his boats after his firm, the Gale Electric Co." In many of the articles it is Joe who receives considerable publicity as a speed boat racing enthusiast. In fact, a feature article published in 1956 (Detroit Free Press, June 17, 1956) states Joe had become the dominant figure in speed boat racing and it described Joe as "Mr. Speedboat." We think that even a casual reading of the clippings leaves the overwhelming impression that Joe owned and sponsored the boats and that they were driven by his daring son, Lee. It is clear from this evidence that the corporation received *113 no substantial publicity from the GALE racing program. On cross-examination, one of respondent's witnesses, a Detroit newspaperman, indicated that a corporate name might not be able to be used in a news story as the owner or sponsor of a boat because it would amount to a "plug". Assuming this is true and also the rule of the American Power Boat Association forbidding registering corporate owners, these are merely factors which petitioner should have taken into account in determining the effectiveness of the racing program as advertising petitioner. Petitioner's burden was to show that effective publicity for it resulted from the program, not the reason why it did not. The racing program did not publicize petitioner. True, the boats bore the name "GALE" but such an insignia could hardly be expected to publicize W. D. Gale, Inc. of Detroit, Michigan. In James Schulz, supra, in which a horse named "Schulztime" was entered in horse shows and the sums expended included in advertising expense, we said: "the name chosen was so subtle and the entry of a horse in a show so far removed from the petitioner's business [a dealer in watches] that it could not reasonably have been expected *114 to publicize the business. * * *" It may also be true, as Joe's testmony and the testimony of several of petitioner's witnesses seem to suggest, that the publicity Joe received from the racing program helped him in a business way in that it had a good public relation result and thereby he became well known, and the program provided contacts and was otherwise helpful in his securing customers for petitioner. Petitioner's expenditures which succeeded in building up its president as a sportsman of great renown, might possibly be of some incidental benefit to petitioner but it could hardly be classed as an ordinary and necessary business expense. In Ralph E. Larrabee, supra, the taxpayers owned a yacht which was entered in a transocean race. They contended that the cost of owning and operating the yacht should be allowed as an ordinary and necessary business expense of a contract machine shop business owned by them. We said at p. 843: "No doubt petitioner's social and sporting activities revolving around the [yacht] may have cemented some friendships that might have resulted in some indirect benefits to his business. Such could be true of any social relationships. *115 But the internal revenue laws allow as deductions only the "ordinary and necessary" expenses in connection with the conduct of a business, and, to be deductible, such expenses must be proximately related to such business. * * *" Some mention was made of a film of the racing exploits of the GALE boats. The film was not shown to the Court and the testimony concerning it indicates that the only reference to the corporation in the film was a leader indicating it had been furnished by the corporation. Such a moving picture about the boats is not enough to show a specific tie-in between the corporation, the services it offered and racing powerboats. There was also evidence showing that beginning sometime in 1953 a picture of a GALE boat, with the slogan "You're ahead with GALE" was used on petitioner's letterheads, envelopes, invoices, and checks. This bit of evidence is about all there is that might indicate some sort of connection between petitioner and the racing program and even here it is none too clear. At any rate, we deem it too insubstantial in view of the mass of evidence clearly showing the effect of the racing program during the years in question was to create for Joe the *116 stature of a leading sportsman, and not to publicize petitioner. We hold that respondent correctly disallowed the amounts expended for boat racing. In the briefs filed by petitioners in these consolidated cases it is stated that the question in Docket No. 71454 is as follows: "If the issue in Docket No. 71453 is decided in the negative, then was the amount so disallowed to W. D. Gale, Inc. a constructive dividend to Joseph A. and Mildred A. Schoenith?" The only issue argued in the briefs filed by petitioners in both dockets is the issue in Docket No. 71453 or the deductibility by the corporation of the expenditures for the boat racing program. Respondent, in Docket No. 71454, determined the boat racing expenditures constituted taxable income to Joseph A. Schoenith. Joe does not argue otherwise, if the expenditures are held not deductible by the corporation as business expenses. We have so held. Therefore, we hold for respondent in Docket No. 71454. To give effect to conceded issues by the parties in both dockets, Decisions will be entered under Rule 50.