Henry B. Kelsey and Elaine M. Kelsey v. Commissioner.
Kelsey v. Commissioner
Docket No. 948-66.
United States Tax Court
T.C. Memo 1968-62; 1968 Tax Ct. Memo LEXIS 237; 27 T.C.M. (CCH) 337; T.C.M. (RIA) 68062; April 15, 1968. Filed *237 Upon the facts, held: (1) That petitioner failed to establish that certain amounts of expenditures for alleged business entertainment, travel, and contributions, that were disallowed by respondent, are deductible as ordinary and necessary business expenses, and contributions. (2) That 2 insurance policies covered ordinary life insurance and the portions of the premiums attributable to life insurance are nondeductible personal expenses; but the portion of the premiums attributable to riders covering insurance for accidental death and waivers of premiums in the event of disability are deductible. Gabriel T. Pap, for the petitioners. Richard J. Mandell, for the Respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The respondent determined a deficiency in income tax for 1962 in the amount of $2,529.30. The questions are whether the petitioners are entitled to deductions, in excess of the amounts allowed by respondent, for alleged business expenses, alleged charitable contributions, and premiums paid on two contracts issued by insurance companies. Due to petitioners' claim in their petition for deduction of amounts of paid premiums, which were not deducted on the tax return, petitioners allege that income tax was overpaid, and a refund of $532.04 is claimed. The respondent determined that the disallowed amounts of the alleged business expenses were personal expenditures, and that the basis for disallowed contributions to charities was not established. Findings *239 of Fact The stipulated facts are so found and are incorporated herein by reference. The petitioners are residents of New York, New York. Their joint return was filed with the district director of internal revenue for the Manhattan District. The date of the marriage of the petitioners was December 8, 1962. Henry B. Kelsey, referred to herein as the petitioner, now is engaged in a business of financial consultant and securities broker. During the period December, 1960 to August, 1966, he was an account executive, or customer's broker, for E.F. Hutton & Company, in New York City, securities brokers and member of the New York Stock Exchange. The duties of an account executive of Hutton are to service clients' accounts, which includes executing clients' orders for purchases and sales of securities. Hutton does not pay a salary to its account executives, it does not provide them with an expense account, and it does not reimburse them for any business entertainment or travel expenses incurred and paid by them. Hutton pays account executives a commission on their transactions. Under Rule 405 of the New York Stock Exchange, it is incumbent upon the account executive to know his *240 customer. Hutton provided its account executives with a desk and telephone, including petitioner. If it is not feasible to have the customer visit the Hutton offices, the account executive might call on the customer at the customer's home. Hutton regards an account executive as a professional salesman in the securities business, and recognizes that in the course of his duties an account executive entertains clients, from time to time, at his own expense, as a customary means for cultivating business, and that he may incur automobile expense as a business expense. Kelsey, during 1962, received from Hutton commissions in the total sum of $30,783. Hutton paid him a commission at the rate of 33 1/3 percent of the commission on each transaction charged and collected by Hutton & Co., of which Hutton retained 66 2/3 percent. The total sum of commissions received by Kelsey was based on that rate. Hutton did not pay Kelsey any sum for an expense account, and did not reimburse him for any out-of-pocket expenditures for taxicabs, travel, meals, or entertainment, or any of the expenditures in dispute here. On his tax return for 1962, petitioner reported his above commissions, but he subtracted *241 therefrom $3,681.52, as "business travel and transportation expenses" (which were listed), thereby reporting as net gross receipts the net amount of $27,101.48. 338 In itemized deductions, petitioner deducted, inter alia, the following, which are in part in dispute: Business entertainment $6,197.94; other business expenses including rent and upkeep of one room of taxpayer's personal apartment, $1,712.59; and charitable and church contributions, $975. The over-all alleged business expenses deducted total $11,592.05. In addition, petitioner deducted, among other items, $975 for contributions which were disallowed. The deductions involved here are as follows: Travel and transportation
$3,681.52
Entertaining
6,197.94
Other business expenses
1,712.59
Disallowed contributions 975.00
Total
$12,567.05
On lists attached to his return, petitioner broke down, in a list, the main categories of the total sum deducted for each general class of alleged business expense, but he did not state, or identify, in most instances, what the detailed explanations were, or what were the connections thereof with his occupation as an account executive of Hutton. The following *242 schedules, taken from petitioner's tax return, are the petitioner's explanations on his return: *14 "Business travel & transportation"
Airplane fares to:
Monaco, France
$ 585.00
Bermuda
315.00
Miami & Nassau
153.41
Meals & Lodging at:
Monaco
113.00
Bermuda
678.75
Miami & Nassau
15.95
Other Expenses in:
Monaco
68.00
Bermuda
150.00
Miami & Nassau
25.00
New York
333.98
Car pool
202.78
Car rental
80.65
Taxis in New York 960.00
$3,681.52 *14 " Business Entertaining Expenses"
American Express credit checks
$1,255.74
Restaurant checks
4,897.20
Theatre tickets 45.00
$6,197.94 *14 " Other Business Expenses"
Telephone
$ 185.28
Business gratuities
604.26
Trade papers
91.75
Rent of one room of apartment
728.25
Its lighting
27.45
Its cleaning 75.60
$1,712.59
Petitioners deducted as charitable and church contributions, without further details, the following: Episcopalian Church
$190.00
Pestalozzi Foundation
50.00
St. Seraphim Foundation
25.00
Hotchkiss School Alumni Dinner
10.00
Other organized charities 700.00
$975.00
Respondent, in the deficiency *243 notice, allowed and disallowed, in part, the deductions above described. He made his determinations allowing deductions of estimated amounts, set forth below, on the basis of the judiciallyannounced rule known as the Cohan rule, in Cohan v. Commissioner [2 USTC 489], 39 F. 2d 540: Type
Allowed
Disal- lowed
Total
1. Travel
$1,217.41
$2,464.11
$3,681.52
2. Entertaining
3,098.97
3,098.97
6,197.94
3. Other
881.29
831.30
1,712.59
4. Contributions 375.00
600.00
975.00
Totals
$5,572.67
$6,994.38
$12,567.05
Explanations of respondent's determinations are as follows: (1) Of the alleged traveling expenses deducted, $3,681.52, the amount that respondent allowed, $1,217.41, under the Cohan rule, consists of all of "other expenses in New York," $333.98; all for car pool, $202.78; all for car rental, $80.65; and $600 for taxis in New York, but he disallowed $360 claimed for taxis (out of $960 deducted). The claimed expenses disallowed, $2,464.11, are $360 for taxicabs, all of the airplane fares, the meals and lodging, and the other expenses deducted for the trips to Monaco, Bermuda and Miami and Nassau. The amounts allowed are estimates *244 under the Cohan rule. (2) With respect to the deduction of $6,197.94 for alleged entertaining (American Express credit charges, restaurants, and theatre), respondent simply allowed a deduction of 50 percent thereof, $3,098.97, under the Cohan rule, on an estimated basis in the absence of detailed records and proof; and he disallowed $3,098.97. (3) With respect to "Other business expenses" deducted (for phone, gratuities, and part of the apartment), $1,712.59, respondent allowed deductions claimed for telephone, gratuities, and trade papers, $881.29, chiefly on an estimated basis under the Cohan rule; he disallowed all of the claimed deduction relating to one room in the apartment, $831.30. (4) With respect to the claimed charitable and church contributions, $975, respondent 339 allowed all of the smaller items listed, $275, plus $100 of the alleged cash contributions to "other organized charities," a total of $375, under the Cohan rule, for the most part; and he disallowed $600 (out of $700) for alleged cash contributions. In the deficiency notice, respondent's explanations of what he disallowed were that the claimed deductions for alleged business travel, entertainment, *245 and taxicab expenses were unsubstantiated, therefore, personal expenses; that the rent and upkeep expenses for part of petitioner's apartment were personal expenses; and that $600 of the contributions deduction was not substantiated. Insurance Premiums: Petitioner held two policies of insurance on which he paid premiums of $1,400.12 in 1962. He did not take a deduction on his return for the premiums, but has claimed the deduction in his petition. One is the policy of Mutual Life Insurance Company of New York. The contract seems to have been issued on December 11, 1960. In January, 1962, the face amount of the policy became $50,000, and the type of insurance became "Flexible Whole Life," a conversion of an earlier policy. On June 11, 1962, Kelsey obtained from Mutual an addition to this policy, a rider, providing an "Accidental Death Benefit" payable upon death by accidental bodily injury. This rider provides, in part, that "The premium for the Accidental Death Benefit is part of the total premium for the policy." Petitioner paid in 1962 premiums on the Mutual policy in the total sum of $1,136.87. On the face of the policy the quarterly premium for the life insurance is stated at *246 $219.71. On the rider it is stated that the total quarterly premium, with the rider, is $239.14. The second policy was issued by Northwestern Mutual Life Insurance Company of Wisconsin; it states on its face that it is an ordinary life policy in the face amount of $15,000; that the ordinary life premium was $259.20. Petitioner paid in 1962 premiums in the sum of $263.25. Contributions: Petitioner did not keep a written record of his alleged cash contributions for which he deducted $700, of which $600 was disallowed. Apartment: In 1962, petitioner's living quarters, an apartment, consisted of a living room, one bedroom and a bathroom, and a kitchen. He lived in 2 apartments during 1962; each one had the same number of rooms. Travel: During 1962, petitioner took a 10day trip to Europe, accompanied by Elaine (now Mrs. Kelsey), during which he was in Monaco for 3 days, and in Nice, San Tropez, Paris, and Lisbon, during the balance of the trip. He did not acquire any new customers during the trip. On his return, he deducted $585 as the cost of his (only) round trip plane fare to Monaco; the total plane fare for the trip was $1,170. Petitioner's hotel bill for meals and lodging in *247 Monaco, for himelf and Elaine, was 552 francs, or $113. On his tax return, petitioner deducted $113 for that expenditure, which included Elaine's lodging and meals. Elaine was not necessary or helpful in petitioner's business, as petitioner admits. He also deducted $68, not explained, for other expenses. Petitioner went to Monaco specifically to see a college friend, Pappadakis, an heir to a shipping business. He did not get any business from Pappadakis. He also saw James A. Lindsay there, who directs brokerage business of the United States Trust Company. Lindsay lives on Riverside Drive in New York City. Petitioner did not get any specific business from Lindsay while in Monaco, or during the trip to Europe. Petitioner and Elaine were married on December 8, 1962. They spent their honeymoon in Jamaica for 2 days, and in Nassau for 5 days. On December 8, 1962, petitioner issued a check for $15.95 to the Towne Club Hotel in Nassau. On his return, petitioner deducted $15.95 for "meals & lodging in Miami & Nassau," in the list of alleged "business travel and transportation expenses" in the total sum of $3,681.52. Petitioner deducted $153.41 for airplane fares to Miami and Nassau. *248 He paid that amount to American Express Company on either March 1 or September 15, 1962; the evidence does not show on which date the payment was made. Petitioner also deducted $25 for other expenses of a trip to Miami and Nassau. The total sum deducted for this trip is $194.36. There is no evidence which fixes the dates of this trip, or why it was taken. There is no evidence that petitioner obtained or transacted any business, or that the trip was connected with his business. On his return, petitioner deducted $678.75, which consists of $51.39, plus $627.36, for "meals & lodging in Bermuda," in alleged business travel and transportation expenses totaling $3,681.52. $51.39 was paid on July 12, 1962, for meals and rooms at the International Hotel, New York International Airport. $627.36 was paid to the Coral Beach and Tennis Club at Paget, Bermuda during 340 the period July 12 to July 15, 1962, for rooms, meals, bar, and miscellaneous charges, for 4 persons, Kelsey, Elaine, Michael Malkan, and Shanton Granger, who went to Bermuda with Kelsey. Granger and Malkan are friends of petitioner. The evidence does not identify Malkan. Granger is an actor. There is no evidence that Malkan *249 was a client of petitioner, or that Malkan brought him any business. Granger has never had a brokerage account with Kelsey and never has brought him any business. There is no evidence that Kelsey made any business contacts or obtained any business during the trip to Bermuda. Petitioner deducted expenses for meals and lodging for Elaine. The cost of transportation, round trip, was $105 for each person's travel, or $420 for 4 tickets. Petitioner deducted the cost of 3 tickets, $315, in the total deduction of $3,681.52 for alleged business travel. In the same total amount, petitioner deducted as other expenses in Bermuda $150. The evidence does not explain that expenditure. The total sum deducted for the trip to Bermuda is $1,143.75. Alleged Business Entertainment Expenses: Apart from and in addition to the expenses deducted, as described above, petitioner paid $1,255.74 to American Express Company. He deducted $4,897.20 for checks issued to various restaurants, dining clubs, hotels, other establishments, and to "cash;" and $45 for theatre tickets. The total sum is $6,197.94. Petitioner introduced at the trial a schedule, exhibit 1, of the payees and amounts of checks issued to *250 restaurants, clubs, hotels, "cash," and others totaling $4,897.20. Only 9 of those checks bear notations of the names of individuals; the total sum thereof is $350.73. One of the 9 checks is for $38.73, paid to a restaurant; there were 2 guests in addition to petitioner; one of the guests was petitioner's mother, Dorothy B. Kelsey. Another one of the 9 checks is for $89.76, dated August 31, 1962, payable to "cash;" it bears the notation that it was an expenditure for "supper;" one of the persons noted as a guest was Elaine Wallace to whom petitioner was married in December, 1962. The respondent agrees that in 1962, petitioner spent $4,897.20, which comprises the following sums paid to restaurants, dining clubs, hotels (for meals), and to miscellaneous payees, but respondent does not agree that petitioner is entitled to a deduction for 100 percent of these expenditures: Frey's Restaurant
$839.43
Ei Morocco
1,239.98
"21" Club
614.09
Chanteclair Restaurant
124.50
Savoy HiltonHotel
980.76
Ritz Carlton Hotel
287.35
Miscellaneous 811.09
$4,897.20
Among "miscellaneous," $811.09, are payments to additional hotels, restaurants, clubs, and "cash;" there *251 is a payment of $60 to the Society of Mayflower Descendants; and there is a payment of $39.40 to the Midocean Bath Club on December 8, the date of petitioner's wedding. Included in the sum of $980.76, paid to the Savoy Hilton Hotel, is a payment of $179.27 on December 8, the date of petitioner's wedding. The sum of $4,897.20, above, payments to restaurants and other establishments, is part of the sum of $6,197.94 which petitioner deducted for alleged business entertaining expense. Respondent, applying the so-called Cohan rule, allowed petitioner a deduction in the flat amount of 50 percent of $6,197.94, or $3,098.97, and disallowed 50 percent, or $3,098.97. In effect, respondent has allowed petitioner a deduction in the amount of 50 percent, or $2,448.60, out of the claimed deduction of $4,897.20, supra, paid to restaurants, hotels, clubs and others, and respondent disallowed 50 percent, or $2,448.60 thereof. Petitioner did not keep any receipts for, or written records or itemized record of, the expenditures totaling $4,897.20, supra, with the exception that on 9 checks totaling $350.73, supra, petitioner wrote the names of various individuals on the checks who allegedly were *252 entertained. There is no evidence establishing the amounts expended by petitioner, at any of the restaurants, hotels, clubs, and miscellaneous places, and through the proceeds of checks drawn to cash, for the entertainment of identified individuals, clients, and prospective clients, with respect to the net sum of $4,546.47 (the difference between $4,897.20 and $350.73), except in one instance mentioned later. Petitioner did not introduce the testimony of any person who was guest during 1962, for whose entertainment, meals, travel, and hotel accommodations, petitioner claims to have spent the sums included in the deductions taken for alleged business entertaining 341 of $6,197.94 (except that of a business friend, R. Jeancon); business travel, $3,681.52; and for whose entertainment he has claimed a deduction of $831.30 for part of the expense of his personal apartment. Petitioner testified about the trips away from this country. Taxicab expenses: Under the rule of the Cohan case, respondent allowed petitioner deductions totaling $1,217.41 (out of $3,681.52) for expenses in New York City for general "other expenses," $333.98; car pool, $202.78; car rental, $80.65; and taxicabs, *253 $600. In addition thereto, petitioner claims $360 for taxicabs, but he did not introduce any evidence in support of this claimed deduction. Contributions: Respondent, under the Cohan rule, allowed petitioner, inter alia, a deduction of $190 for contributions to the "Episcopal Church," and $100 for cash contributions to "other" charitable organizations, but he disallowed a claimed deduction of $600 for alleged cash contributions. Petitioner failed to introduce evidence establishing the payment of an additional $600 to churches and charitable organizations. Ultimate Findings of Fact 1. Petitioner did not prove that he spent more than the respective amounts allowed by the respondent as (a) business expense deductions for business entertaining, $3,098.97; for business expenses in New York City, $1,217.41; and for other business expenses - telephone, gratuities, and trade journals, $881.29; and as (b) church and charitable contributions, $375. 2. Petitioner failed to prove that he incurred and paid (a) business expenses for business entertaining in the alleged amount of $3,098.97; airplane, meals, lodging, and other expenses in the alleged sum of $2,464.11 in connection with trips *254 to Monaco, France, Bermuda, and Miami and Nassau, and taxicabs in New York; (b) rent and upkeep of part of his personal apartment, $831.30; and (c) church and charitable contributions in the alleged amount of $600. 3. Part of the total sum paid in 1962 as premiums on 2 insurance policies, $1,400.12, represented premiums paid for life insurance, which amounts are not deductible as medical expenses, and are nondeductible personal expenses. A portion of the total sum of the premiums paid on each insurance policy is for "riders," which are a part of each contract, providing for waiver of the payments of premiums in the event of the insured's total and permanent disability, and for accidental death benefit. Those parts of the premiums are deductible. Respondent has conceded this matter. Since petitioner failed to establish the part of the premiums allocable to the premium for life insurance under each policy, and the other parts allocable to the waiver of premiums in the event of disability, and allocable to insurance benefits from accidental death, computations thereof are to be made by the parties under Rule 50. Each policy was not exclusively a policy of insurance for accidental *255 death insurance, but was a policy of both life insurance and insurance covering death due to accident. Opinion Issue 1. Claimed Business Expenses and Contributions: Respondent has agreed that petitioner spent $6,197.94 for restaurant, hotel, and miscellaneous charges: $831.30 for rent and upkeep of one room in his apartment; $2,104.11 for airplane fares and expenses during three trips outside the country. He does not agree that petitioner paid the disputed amounts to $360 for taxicabs, and $600 for church and other contributions. Except for a very few receipts from hotels, cancelled checks, and credit records, to which the respondent has given recognition, which do not account for all of the alleged business expenses, petitioner did not maintain any diary, memorandum, or other written records in 1962, or receipts, with which to substantiate his claims for the business expense deductions taken on his tax return; and he did not keep any such written records, or obtain receipts, for the alleged church and other contributions of $700 (of which $100 was allowed). The so-called Cohan rule in Cohan v. Commissioner, 39 F. 2d 540, 543-544 (C.A. 2, 1930), supra, represents a *256 judicially determined method for dealing with claimed and alleged business expense deductions where and if the Court is convinced that the taxpaper has paid some deductible expenses but has not maintained any, or has kept inadequate, written, detailed records of the amounts, the dates, the nature of, and the purposes of alleged business expenses.[1] The rule is as follows, pp. 543-544, supra: 342 Absolute certainty in such matters is usually impossible and is not necessary; the Board [Tax Court] should make as close an approximation as it can, bearing heavily if it chooses upon the taxpayer whose inexactitude is of his own making. * * * This Court has frequently applied the Cohan rule, so as to allow a taxpayer a deduction of some estimated amount for claimed business expenses where no inadequate expense records were kept, but not 100 percent thereof. In making his determinations *257 in his statutory notice of deficiency, respondent applied the Cohan rule. Upon making his audit and after conferences with the petitioner, respondent made estimates of the amounts, out of the total sum of each class and item of expenditures and alleged expenditures, which he concluded represented a reasonable allowance and deduction for each type of alleged expense and contributions, "bearing heavily against the taxpayer for his own inexactitude." The Cohan rule already has been applied. Petitioner contends, first, that the full amount of each alleged expenditure is deductible; but he seems, also, to contend in the alternative that this Court should increase the amount of allowed deductions under a further application of the Cohan rule. Our conclusions are that petitioners failed to prove that 100 percent of the claimed deductions, in issue here in each instance, are deductible; and that the evidence does not support increases in the amount of each item which respondent has determined is deductible. Respondent's "approximation" and estimate of an allowable deduction for alleged business entertaining was 50 percent of the total claimed, and petitioner has received a deduction of $3,098.97. *258 Petitioner's commissions, received from Hutton & Co., were $30,783, of which sum 10 percent would amount to $3,078. Petitioner, on whom rested the burden of proof, failed to establish that 10 percent of his total commissions did not cover entertainment expenditures which were directly related to his business, or were reasonably related thereto in order to maintain or increase his receipts of orders from clients and those who reasonably could be expected to conclude business transactions. Petitioner admits that some of his business in 1962 was received in an established way, more or less automatically from established clients or institutions, for whom no entertainment or travel expense was paid, and he broke down his receipts of commissions into two parts. Of the total sum of $30,783, he received commissions of $10,029.07 from sources for whom he did not expend, and did not need to expend, any sum for entertaining or travel. It is the balance, $20,753.93 of the commissions received for which he claims that he expended most of the total sum deducted for business entertaining. He also argues that he spent sums for entertaining and travel in order to make contacts with wealthy persons *259 who, in the future, could or would give him business. Passing that point for the present, the allowance of a deduction of $3,098.97 for business entertainment, about 13 percent, is a reasonable allowance under all the evidence, and we cannot conscientiously increase that allowance. Petitioner has relied largely on his own testimony. He did not ask any of his clients to testify about his entertainment of any of them at lunch, dinner, the theatre, at supper clubs, or in his apartment. He submitted a list of the names of 10 clients from whose business he received $20,753.93 in commissions. He did not ask any of them to testify. A great deal of petitioner's testimony represented his self-serving conclusions about matters in issue rather than proof of his claims, under his burden of proof. His testimony has been considered fully. To the extent that it included statements of fact, worthy of belief and not wholly speculative, such testimony has been accepted and given effect. With respect to his argument that he expended money in travel and entertainment in order to make contacts which would yield new business, his testimony was inadequate, and the evidence is not sufficient to support *260 a finding that any of those parts of the claimed deductions reasonably can be allowed. No individuals were identified as reasonably likely clients in connection with the expenditures claimed for the trips to Miami and Nassau, and Bermuda. Petitioner's testimony regarding the persons entertained in Monaco is not persuasive, convincing, or credible, and falls short of the required proof that such expenditures were ordinary and necessary business expenses for prospective business. Nothing was introduced through testimony, or otherwise, about the possible business interests of the two persons allegedly entertained in Monaco. 343 The 10 clients from whom petitioner received business in 1962, and the commissions (in round figures) received, were as follows: Soteroplos
$1,800
R. Calvert, Sr
825
J. M. Shaw
9,754
F. Peluso
180
G. Asker
854
W. A. Richardson
498
Julia Price
242
Gretchen Powel
410
Howard Powel
258
Frank G. Williams
5,931 Petitioner testified that he estimated having spent about $100 on "entertainment," i.e., meals, for Nick P. Soteroplos. That is the only estimate of the expense of entertaining clients which petitioner undertook to make. *261 Petitioner testified that he took a client, Frank G. Williams, to Frey's Restaurant about 8 times. He did not estimate the total amount of the alleged expense. Respondent subpoenaed Williams and asked him to testify. Williams testified that he had been a client of Kelsey for about 2 1/2 years, including 1962; that in 1962, Kelsey had never taken him to a restaurant, bar, or theatre, or entertained him at all; and that he (Williams) never went outside the building (office) with Kelsey when he went to discuss business with Kelsey. Williams' testimony contradicts petitioner's testimony. Petitioner contends that the testimony of Williams is not credible because Williams became unfriendly and hostile. Petitioner's counsel did not cross-examine Williams. Although we regard Williams' testimony as credible, it would make little or no difference whether we concluded that it was worthy of belief, since respondent has allowed a deduction of $3,098.97 for business entertaining expense which could include the expense of entertaining Williams. However, the contradiction involved in Williams' testimony demonstrates the general weakness in petitioner's evidence and the need for his having offered *262 more than his selfserving assertion that all of the expenditures for alleged business entertaining and travel was proximately related to his business. Petitioner had the burden of proving not only that all of the expenses of enteraining and travel were paid, but also that they were proximately related to his business. If any of them were personal expenses, they are not deductible. Reginald G. Hearn, 36 T.C. 672, affd. 309 F. 2d 431 (C.A. 9, 1962), certiorari denied 373 U.S. 909. The deductions are claimed under section 162(a) as ordinary and necessary business expenses. The regulations of the respondent, Income Tax Regulations, section 1.162-1(a), provide that deduction is allowable for ordinary and necessary expenditures which are directly connected with, or pertain to, the taxpayer's business. Petitioner contends that in his business (a securities salesman, or broker, whose income is derived from commissions), it is ordinary and necessary for him to meet and cultivate persons of means who invest and trade in securities, and that he is obliged to spend considerable sums in entertaining not only his existing clients *263 but prospective ones; and that it also is necessary to travel to resorts frequented by people of wealth who may become future clients. In an annual publication of the Internal Revenue Service, "Your Federal Income Tax," published for the assistance of taxpayers in preparing their income tax returns, there is information for commission salesmen, under "Employees' Expenses" (see the 1963 edition relating to the taxable year 1962) to the effect that a commission salesman may deduct entertainment expenses, if he can show that "his entertainment of prospects has a direct effect on and can reasonably be expected to increase or maintain his commissions" (emphasis supplied). Petitioner cites the above statement in support of his claim for the additional deductions in issue here. The answer to petitioner's argument is that the nature of his business, a commission salesman, is not determinative of the matter of whether the claimed expenditures are deductible, even though in that business entertainment of customers and prospective ones may be fairly customary. Rather, it is the relationship of the alleged expenditures to the taxpayer's business, and he is obliged to show that there existed both *264 a proximate relationship to his business, and a reasonable expectancy of benefit to his business, of the particular expenditures he seeks to deduct. If the entertainment provided was primarily for social or personal reasons the expenditures are nondeductible personal expenses, even though the persons entertained could, if they would, provide future business. The burden on the taxpayer includes proving a negative, namely, that his entertainment and travel expense was not primarily personal and was not so remotely related to his business as to fall within the area of nondeductible personal expense. In each case, the deductibility of entertainment and travel expense is a question of fact under which the taxpayer usually has the burden of proof. The courts, 344 including this Court, have frequently observed that claims for deducting expenditures for alleged business entertainment, and travel, are susceptible of abuse, and that the expenditures themselves are of such nature as to afford considerable opportunity for abuse; and therefore, the taxpayer seeking the benefit of such deductions must offer reasonably satisfying proof that the expenses were in fact incurred, and also "bore *265 a proximate relationship to the conduct of his business." Reginald G. Hearn, supra, p. 674; Challenge Manufacturing Co., 37 T.C. 650; Ralph E. Larrabee, 33 T.C. 838; Union Trust Company v. Commissioner, 54 F. 2d 199. We are not able to sustain petitioner's claims for additional deductions for alleged business entertainment and travel expenses because he failed to offer evidence which reasonably supports his claims. Neither the record in this case nor the authorities cited by petitioner are of any avail. In the matter of the claim for an additional deduction of $600 for alleged cash contributions to churches and organized charitable organizations, there is also failure of proof. Petitioner alleges that he made various cash contributions of $700. Under the Cohan rule, respondent allowed him a deduction of $100. Petitioner did not attempt to identify the alleged "organized" charitable donees, other than two churches. With respect to the alleged cash contributions to churches, in addition to $190 for which respondent allowed deduction, petitioner failed to offer any convincing proof. His bare, unsubstantiated assertion is insufficient *266 to sustain his burden of proof. Respondent's determination that $600 is not deductible, because unsubstantiated, put the matter in issue. Petitioner was obliged, under his burden of proof, to do more than merely reiterate the claim made on his return. He did not even attempt to make an analytical explanation of his bare, selfserving claim. For failure of proof, the claim for an additional deduction of $600 for contributions is denied. The same conclusion and reason applies to the claim for an additional deduction of $360 for taxicabs. Issue 2. Deductibility of Insurance Premiums: Premiums paid under life insurance policies are nondeductible personal expenses. James F. Kutz, 5 B.T.A. 239; section 1.262-1(b)(1), Income Tax Regulations.Petitioner acknowledges that rule. However, petitioner contends that both policies were wholly and only policies of insurance providing benefits in the event of accidental death. But petitioner failed to establish that his contention is true and correct. To the contrary, the two insurance policies involved provide for both ordinary life insurance, waiver of premiums in the event of disability, and benefits in case *267 of accidental death. Also, he has not established that the full amount of the premiums paid under both policies, $1,400.12, was attributable to riders, or clauses, providing for the waiver of premiums in the event of the insured's total and permanent disability, and for accidental death benefits, and that no parts of the premiums were for ordinary life insurance. Neither one of the insurance policies is wholly and exclusively a policy limited to insuring the insured against accidental death and providing for waivers of premiums under certain circumstances. The cases, Edelman v. United States, 329 F. 2d 950, and Heard v. Commissioner, 269 F. 2d 911, are distinguishable on their respective facts, and on the particular issue decided in each case. Those cases are not helpful to the petitioner, excepting with respect to the concessions which respondent has made. Respondent agrees that some unascertained amounts of the total premiums paid by petitioner in 1962 under each policy are deductible as a medical expense deduction, but such deductible portions are limited to premiums attributable to the "riders" which provide for the waiver of premiums in the event *268 of disability, and to insurance covering accidental death. The parties will agree under Rule 50 to the respective amounts of the paid premiums which were paid for life insurance, not deductible, and which were paid for the other coverages, waiver of premiums in the event of disability and insurance benefits in the event of accidental death. The holdings here preclude any claim that income tax for 1962 was overpaid. There is a deficiency in tax for 1962. The main issues are decided for the respondent. Decision will be entered under Rule 50. 345 Footnotes
1. See section 274(d), 1954 Code as amended by the Revenue Act of 1962, effective for periods after December 31, 1962, calling for the taxpayer's substantiation of certain alleged expenses for which deductions are claimed. In this case the taxable year and periods involved are prior to December 31, 1962.↩