FEIN-MARQUART ASSOCIATES, INC., RONALD G. MARQUART AND LINDA M. MARQUART, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Fein-Marquart Associates, Inc. v. Commissioner
Docket No. 24809-82.
United States Tax Court
T.C. Memo 1985-288; 1985 Tax Ct. Memo LEXIS 343; 50 T.C.M. (CCH) 152; T.C.M. (RIA) 85288; June 17, 1985. *343 Fein-Marquart Associates, Inc., a corporation in the business of computer softward research and design, reimbursed a 49-percent shareholder for racing expenses incurred during the years in issue. The corporation deducted said reimbursements as business expenses. Held, petitioners failed to establish that the reimbursed expenses were ordinary and necessary business expenses deductible under sec. 162(a), I.R.C. 1954. Held further, the reimbursed expenses constituted constructive dividends to the shareholder. Robert L. Flanagan and Robert A. Snyder, Jr., for the petitioners. Robert A. Miller, for the respondent. STERRETT MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Chief Judge: By notice of deficiency dated July 16, 1982, respondent determined that Fein-Marquart Associates, Inc., was liable for deficiencies in Federal income tax for the years 1978 and 1979 in the respective amounts of $6,421.50 and $3,527.01. By separate notice of deficiency dated the same date, respondent determined that Ronald G. Marquart and Linda M. Marquart were liable for deficiencies in Federal income tax for the years 1978 and 1979 in the respective amounts of $6,541.49 and $5,696.38. [1] The issues presented for our decision are (1) whether expenditures made by Fein-Marquart Associates, Inc., to reimburse Ronald G. Marquart for expenses incurred in connection with automobile racing activities are deductible as ordinary and necessary business expenses within the meaning of section 162(a), I.R.C. 1954; and (2) whether the reimbursed automobile racing expenses constitute constructive dividends to Ronald G. Marquart. *345 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference. Petitioner Fein-Marquart Associates, Inc. (hereinafter referred to as Fein-Marquart) was incorporated in Maryland on October 31, 1968 for the primary purpose of engaging in the business of computer software research and design. Fein-Marquart filed Federal corporate income tax returns for its 1978 and 1979 taxable years with the Internal Revenue Service Center, Philadelphia, Pennsylvania. At the time they filed their petition herein, petitioners, Ronald G. Marquart (hereinafter referred to as Dr. Marquart) and Linda M. Marquart, husband and wife, resided at 13918 Sunnybrook Road, Phoenix, Maryland. They filed joint Federal income tax returns for 1978 and 1979 with the Internal Revenue Service Center, Philadelphia, Pennsylvania. During the years in issue, Dr. Marquart owned 49 percent of Fein-Marquart's issued and outstanding common stock and served as the corporation's vice president. Alvin E. Fein also owned 49 percent of Fein-Marquart's issued and outstanding common stock and *346 served as the corporation's president. The remaining 2 percent of Fein-marquart's stock was owned by various employees of the corporation. Almost all of Fein-Marquart's business during the years in question, and at least up until the time of trial, was obtained through competitive bidding. During 1978 and 1979 Fein-Marquart paid $13,396.18 and $11,723.90 for the operation of a racing car. There is no mention in the corporate minutes for 1978 or 1979 of discussions with respect to the corporation's willingness to pay for automobile racing expenditures. The corporation's sponsorship of a racing car came about as the result of Dr. Marquart's suggestion that Fein-Marquart sponsor a recing car with himself as the driver for the avowed purpose of assisting in recruiting computer programmers with the background and experience necessary to suit the business of the corporation. Dr. Marquart had been a member of the Sports Car Club of America (SCCA) since 1975 and had been a spectator of racing events prior to 1978. However, he had not engaged in racing prior to 1978. Fein-Marquart reimbursed Dr. Marquart by check twice per year for the expenses he incurred in connection with *347 automobile racing activities during the years in issue. None of the individuals interviewed for programming jobs in 1978 and 1979 came into contact with the corporation on account of Dr. Marquart's involvement with automobile racing. However, in 1980 and 1981, Dr. Marquart did discuss Fein-Marquart's business with three or four people he had come into contact with as a result of the corporation's sponsorship of the racing car. None of these people were hired by the corporation. On its 1978 and 1979 Federal corporate income tax returns Fein-Marquart deducted the reimbursements made to Dr. Marquart for automobile racing expenses in the respective amounts of $13,396.18 and $11,723.90. The corporation deducted said amounts as business expenses under the category of "advertising expense." Respondent disallowed the claimed deductions. In addition, he increased the taxable income of the Marquarts for 1978 and 1979 by the amounts of the disallowed advertising expense deductions claimed by Fein-Marquart for those years on the grounds that such amounts constituted constructive dividends to the Marquarts. OPINION The first issue for decision is whether expenditures made by *348 Fein-Marquart to reimburse Dr. Marquart for expenses incurred in connection with automobile racing activities are deductible as ordinary and necessary business expenses within the meaning of section 162(a). The parties have agreed that there is no question in this case with respect to whether Dr. Marquart actually incurred the expenses for which he was reimbursed or whether Fein-Marquart actually reimbursed him for those expenses. The only question to be resolved in connection with this first issue is whether the reimbursed expenses meet the "ordinary and necessary" requirement of section 162(a). This question is primarily a factual one, and the petitioner corporation has the burden of proving that the expenditures were ordinary and necessary to the operation of its business in order to sustain its claim to their deductibility. Deputy v. du Pont,308 U.S. 488, 496 (1940); Rule 142(a), Tax Court Rules of Practice and Procedure. We conclude that petitioner has not met its burden by a wide margin. "Ordinary" has been interpreted to mean that the expense must have a reasonably proximate relationship to the operation of petitioner's trade or business. Deputy v. du Pont,supra at 495-496; *349 Challenge Manufacturing Co. v. Commissioner,37 T.C. 650, 660 (1962); Larrabee v. Commissioner,33 T.C. 838, 843 (1960). See also section 1.162-1(a), Income Tax Regs. "Necessary" has been interpreted to mean "appropriate" or "helpful." Commissioner v. Heininger,320 U.S. 467, 471 (1943); Blackmer v. Commissioner,70 F.2d 255, 256 (2d Cir. 1934); Carbine v. Commissioner,83 T.C. 356, 363 (1984), on appeal (11th Cir. Jan. 25, 1985). Although the expenditures in question were claimed by Fein-Marquart as "advertising expenses," petitioners do not seriously contend that such expenditures were made to promote the corporation's products or services to customers. Instead, the avowed purpose of the corporation's sponsorship of the racing car was to recruit potential employees capable of functioning as "superprogrammers," people who have an extraordinary empathy with the computer. It is contended that an unusually high percentage of the racing population was comprised of people who were involved in the computer field. It is further contended that the characteristics of those people involved in *350 racing match the characteristics of "superprogrammers," who were sought by the corporation. With respect to the contention that a large percentage of the racing population was comprised of people with experience in the computer field, Dr. Marquart testified that he first noticed that a large number of people who attended SCCA meetings were "professionals" and that he believed that he could find professional computer programmers from among the crowd. He further testified that he had to become personally involved in the actual racing itself in order to be able to communicate in a meaningful manner with the racing population. At trial, Dr. Marquart presented a 1980 membership list of the SCCA to support his contention that 4.3 percent of the listed members were involved in the computer field, which, according to Dr. Marquart, was "a much higher percentage than the general population." Respondent asserts that only 2.5 percent of the SCCA members for 1980 are listed as having any possible connection with the computer field. However, even accepting Dr. Marquart's calculation as correct, respondent still would question its relevancy. As respondent points out, petitioners *351 presented on statistical evidence to support their contention that a large percentage of the racing population was comprised of people involved in the computer field during 1978 and 1979, the two years at issue. Moreover, petitioners admit that Fein-Marquart was not looking for your "run of the mill" computer programmer, but was searching for the rare breed of people capable of functioning as "superprogrammers". There are 945 People listed as members of the SCCA in 1980. Among the listed members evidently taken into account by petitioners in arriving at the 4.3 percent calculation were people listed as "Systems Analyst," "Analyst--Baltimore Gas & Electric," "Computer Technician,," "Applications Analyst," and "Systems Engineer." It is impossible to determine from the 1980 list what percentage of the members actually were involved in computer programming, as opposed to some other aspect of the computer field. Thus, even assuming the composition of the 1980 membership could be considered comparable to or representative of the membership during the years in issue, there is no way to determine the number of members who could seriously be considered potential employees. In *352 fact, one of the people with whom Dr. Marquart came into contact as a result of his racing activities and with whom he spoke in 1980 concerning Fein-Marquart's business was listed as an SCCA member in 1980 and was also listed as a "Computer Technician." Dr. Marquart admitted at trial that he learned, in the course of their conversation, that this individual was not a computer programmer at all and therefore was not a potential employee. In short, any relationship between SCCA membership and computer programmers is tenuous, at best. With respect to petitioner's contention that the characteristics of those people involved in racing match the characteristics of "superprogrammers," Dr. Marquart testified as follows: Race car driving people are generally adventurists, they look for and seek out challenge. They are dependable in the sense that they will work at the project until it is done. There are a lot of disappointments in race car driving, broken cars and that sort of thing and if you don't have the ability to keep plugging away at it, you better not be one. He further testified that both race car drivers and "superprogrammers" are innovative, independent, and intense people, *353 who like to be presented with challenges. We do not seriously question Dr. Marquart's assessment of the characteristics shared by race car drivers and "superprogrammers." However, those same characteristics are hardly unique to race car drivers and "superprogrammers." Having reviewed all of the evidence presented, we think it crystal clear that petitioners have not established a proximate relationship between the racing expenditures and Fein-Marquart's computer programming business. It is also clear that the corporation received no substantial benefit from its sponsorship of the racing car. None of the people interviewed by Fein-Marquart during the years in issue came into contact with the corporation as a result of its sponsorship of the race car. Further, although Dr. Marquart eventually talked with three or four people with whom he had come into contact as a result of his racing activities, that fact does not establish that the racing expenses were ordinary and necessary business expenses. In the first place, it appears from the record that the interviews for the most part were informal, at best, and none of the people interviewed were hired by Fein-Marquart. More *354 importantly, it is certainly not unnatural to run into potential business contacts in any social or recreational environment. In Larrabee v. Commissioner,supra, the taxpayers owned a yacht that was entered in a transoceanic race. They contended that the cost of owning and operating the yacht should be allowed as an ordinary and necessary business expense of a contract machine shop business owned by them. What we there said bears repeating herein. No doubt petitioner's social and sporting activities revolving around the * * * [yacht] may have cemented some friendships that might have resulted in some indirect benefits to his business.Such could be true of any social relationships. But the internal revenue laws allow as deductions only the "ordinary and necessary" expenses in connection with the conduct of a business, and, to be deductible, such expenses must be proximately related to such business. * * * [33 T.C. at 843.] Petitioners having failed to establish both that the racing expenditures had a reasonably proximate relationship to the operation of Fein-Marquart's business and that these expenditures were appropriate or *355 helpful to the business, we hold that the expenditures are not deductible as ordinary and necessary business expenses. The remaining issue for decision is whether the reimbursed automobile racing expenses constitute constructive dividends to Ronald G. Marquart. Under sections 301(a) and (c)(1) and 316, a distribution of property made by a corporation to a shareholder generally is includable in the shareholder's gross income as a dividend to the extent of the corporation's earnings and profits. It is well settled that payments by a corporation for the personal benefit of a shareholder may result in the receipt of constructive dividends by the shareholder. Challenge Manufacturing Co. v. Commissioner,supra at 663. The burden of proving that the corporation did not have earnings and profits sufficient to support dividend treatment lies with petitioner. DiZenzo v. Commissioner,348 F.2d 122, 126-127 (2d Cir. 1965). Of course, the mere fact that corporate payments are not deductible does not automatically result in constructive dividends to a shareholder. Palo Alto Town & Country Village, Inc. v. Commissioner,565 F.2d 1388, 1391 (9th Cir. 1977); *356 Ashby v. Commissioner,50 T.C. 409, 418 (1968). The test for constructive dividends in such circumstances is twofold; not only must the expenses be nondeductible to the corporation, but they must also represent some economic gain or benefit to the shareholder. Palo Alto Town & Country Village, Inc. v. Commissioner,supra at 1391; see also United States v. Gotcher,401 F.2d 118, 121-124 (5th Cir. 1968). Petitioners have the burden of proving erroneous respondent's determination that the disallowed deductions claimed by Fein-Marquart constitute constructive dividends to Dr. Marquart. Rule 142(a), Tax Court Rules of Practice and Procedure.
The facts reveal that Fein-Marquart reimbursed Dr. Marquart, a 49-percent shareholder of the corporation, twice yearly during the years in issue for expenses he incurred in connection with automobile racing activities. We have found that Fein-Marquart's expenditures did not substantially benefit the corporation. On the other hand, the record is clear that Dr. Marquart enjoyed racing activities. Although he had never actually reced prior to the years in issue, Dr. Marquart had been a member *357 of the SCCA since 1975 and had been a spectator of racing events prior to 1978. We cannot say, under the facts presented, that Fein-Marquart's reimbursements of racing expenses did not benefit Dr. Marquart personally. Petitioners presented no evidence to establish that Fein-Marquart did not have earnings and profits sufficient to support dividends in the amounts determined by respondent. Accordingly, we hold that respondent correctly determined that Fein-Marquart's reimbursement of racing expenses constituted constructive dividends taxable to the Marquarts. [2]
Decision will be entered for the respondent.
Footnotes
1. Pursuant to Rule 61(a), Tax Court Rules of Practice and Procedure↩, petitioners joined in filing a single petition in this case.
2. We have considered the cases relied upon by petitioners and have found them to be factually distinguishable.↩